No. 27.—JESSE S. THOMAS, plaintiff in error, vs. EZEKIEL HAWKINS, defendant in error.

[1.] It is not indispensable to the exercise of the power of the Inferior Court to "*discontinue*" an old road, that the Court should have appointed persons to report on the subject of the discontinuance of the road, or that the Court should be sitting in term time.

[2.] A Court of Equity "will not, by injunction granted upon an involuntary application, direct the defendant to *perform* an act."

In Equity, in Sumter Superior Court. Decided by Judge ALLEN, at Chambers, March 19th, 1856.

This was a bill filed by Ezekiel Hawkins, in behalf of himself and all others who might be interested in and who might become parties to the bill, against Jesse S. Thomas. The bill charges, that in the month of September, 1855, the said Thomas, secretly and without the knowledge of the complainant or the public generally, induced divers persons to sign a petition to the Inferior Court of Sumter County to change and alter the public road leading from Americus to Cuthbert *via* Providence in said county, so that, in the language of the bill, " the said road should be closed from the said road leading from Bottsford in said county to Culpepper's bridge, for about the distance of three-fourths of a mile to near the plantation of a Mr. Murray in said county, thereby forcing all the travellers from Americus to Cuthbert, or from Cuthbert to Americus, and the travel between the inhabitants in that vicinity, to go through Bottsford to arrive again on the direct road from Americus to Cuthbert"—said route being about a mile and a quarter farther than the old route ; that said petition was considered by said Inferior Court in chambers, on the 26th day of September, and that said Court, without appointing commissioners to examine the proposed change, passed the following order :

" Petition having been made, &c. it is hereby ordered, in

accordance with the same, that the road leading from Culpepper Bridge, Kinchafoonee Creek, in Kinchafoonee Co., to Americus, be changed from a point at the forks of the roads in Kinchafoone Swamp, and closed to the. cross-roads near Mr. Drewery Murray's, so as to throw the same round by Bottsford—the same being alleged to be no farther, and a better way." Signed, &c.

The bill charges that said order, thus passed, is illegal and void, but that said Thomas, acting by authority of the same, has felled trees across and otherwise obstructed said public road, to the great inconvenience of complainant and the public generally ; that complainant, with many others interested in the matter, petitioned said Inferior Court, at its last term, to rescind said order, and said Court refused to entertain the petition, on the ground that they "could not act on said order after it had been granted ;" which decision the bill alleges to be contrary to Law and Equity. The bill further charges, that said Thomas still continues to obstruct that portion of said road described in said order, although he has been repeatedly requested to desist.

The bill prays that the said Thomas may be restrained from further obstructing said road, and commanded to remove the obstructions he has already placed in it, so that the same may be open to the use of the travelling public, and that said order passed by the Inferior Court be declared void and set aside.

The bill was sanctioned, and on the 23d of February, 1856, filed in the Clerk's office of Sumter Superior Court. The writ of injunction was attached on the 25th of that month, and on the 3d of March thereafter service was acknowledged by the defendant. On the 19th of March, notice having been waived, the case came on for a hearing at chambers, on a motion made by defendant to dissolve the injunction on the coming in of his answer. Before the hearing, complainant was permitted to file an amendment to his bill, which charges that he is particularly interested in the opening of the road

referred to; that he keeps a house of entertainment on the road leading from Americus to Cuthbert, and that by the closing up of that portion of said road described in the order of the Inferior Court, the travel by his said house has been diminished; that he also owns a mill situated near his said house, which has lost custom on account of said road being closed. To the allowance of this amendment Counsel for defendant excepted. Defendant's answer was then read. The answer admits most of the facts charged in the bill; it denies that defendant acted secretly or in bad faith in procuring said order from the Inferior Court, or in closing up said road; denies that the change made has increased the distance of travel more than three quarters of a mile; denies the right of complainant to seek relief in behalf of the public; denies that any serious injury has been done the public by closing said road, alleging that it was an old road and had fallen generally into disuse, most of the travel between Americus and Cuthbert being by Plains of Dura and not on said road; that there was no public place on said closed road, and it was not used by the neighbors even to get to Bottsford or Americus, or as a mill or church road. The answer states that the said road was a serious injury to defendant before it was closed, forming, together with other roads, an angle in his plantation, and causing him to keep long lines of fences at great expense; that he has now, acting in good faith under said order, moved said fences and sowed the land with oats, and it would be a great hardship and expense to defendant to replace said fences and have to lose his crop.

The answer insists that the order granted by the Inferior Court, and all the action of said Court in reference to said road, is legal and proper.

Upon this state of facts defendant's Counsel moved to dissolve said injunction, for the following reasons:

1st. Because there is no equity in said bill.

2d. The parties have a remedy at Law.

3d. Because the complainant has no interest, as appears by the bill and answer, in the subject matter.

4th. That the injunction was affirmative—directing a thing to be done; and such an injunction ought only to be granted after a hearing and decree.

The Court refused to dissolve said injunction, and defendant's Counsel excepted, and now assigns said refusal, and also the judgment allowing said amendment to be filed to said bill, as error.

McCAY & HAWKINS, for plaintiff in error.

SMITH & CRAWFORD, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was it right in the Court to over-rule the motion to dissolve the injunction? This is the only question in the case.

The injunction was a precept to Thomas, commanding him no longer to obstruct the road, but to remove the obstructions already placed by him in the road, so that the road might be open and free to the travelling public, and might be in as good a condition as it was in before it was obstructed by Thomas.

All the grounds on which the motion to dissolve this injunction was put, except the last ground, are included in the first; and the first was, that there was no equity in the bill.

Was there any equity in the bill?

Thomas, in stopping up the road, acted in accordance with an order of the Justices of the Inferior Court. Of course, therefore, if this order was valid, the injunction was wrong.

Was this order valid? It was if the Justices of the Inferior Court had power to pass it. Did they have this power?

The first section of the Act of 1799, "to empower the Inferior Courts of the several counties in this State to order the laying out of public roads, and to order the building and keeping in repair of public bridges," is as follows: "That all the roads in the several counties of this State that have

been laid out by virtue of any Act of the General Assembly, or by virtue of any order of Court, are hereby declared to be public roads; and that from time to time, and at all times hereafter, the Inferior Courts of the several counties in this State shall have full power and authority to order the laying out of public roads where the same may be necessary, and to discontinue such roads as now are or shall hereafter be made, as shall be found useless, and to alter the roads so as to make them more useful and convenient, as often as occasion shall require." (*Marb. & Craw.* 405.)

These words contain an express grant of power to the Inferior Courts to " discontinue" roads—to discontinue such roads " as shall be found useless;" that is, such roads as those Courts shall find to be useless. The question of the utility of existing roads, must be a question for such Courts. This must be the meaning of the words.

Has this grant of power been repealed by any subsequent Statute? The words containing it are not to be found in *Cobb's Digest,* whilst other words of the section are to be found in that Digest. This is also true of *Prince's two Digests.*

Why were the words left out of those Digests?

The 29th section of the Act of 1818, " to alter and amend" the Road Laws of this State," is as follows: " The Justices of the Inferior Courts of each county in the State, or a majority of them, shall have power and authority to hear and determine on all matters which may come before them relative to roads, bridges, &c. as are authorized by law, either in term time or while sitting for ordinary purposes, or at any special meeting held for that purpose." (*Cobb's Dig.* 952.)

The compilers of those Digests probably thought that the grant of power contained in these words, superseded that contained in the words aforesaid of the Act of 1799. If they so thought they would of course leave out of their Digests the words of the older Act.

Be that as it may, there is nothing in the Act of 1818, or in any other Act, that *repeals* the part of the Act of 1799

Thomas *vs.* Hawkins.

above quoted. I think, myself, however, that the extent of the power given by this part of that Act, is not greater than the extent of the power given by the said 29th section of the Act of 1818.

I say, that in the Act of 1818 aforesaid—an Act which is the great Road Law of the State—there is nothing which repeals the grant of power contained in the part aforesaid of the first section of the Act of 1799. If there is any thing, it must be this, which is a part of the first section : "And on application to said Court for any new road, or any alteration in an old road, the said Justices shall proceed to appoint three discreet and proper persons residing in the neighborhood where such road is intended to pass, and in case they shall find it of public utility, they may proceed to mark out the same on oath taken before any Justice and report to the said Court."

There is nothing in this which says that the Inferior Court shall not have power to "discontinue" existing roads, or "to hear and determine on all matters relative to roads." The most that any thing in this does is to *direct* the Inferior Court how to exercise its power in two specified cases, viz: the application for a "new road," and the application for an "alteration in an old road."

The previous part of the section says that the Justices of the Inferior Courts, at the first session after the passage of the Act, or as soon thereafter as convenient, should proceed to define and point out as many and such districts as to them should seem meet and proper, having due regard to proportioning said districts or divisions, so as to divide the labor and expense of the roads, causeways and bridges equally among the citizens and hands of the respective districts throughout the county. The subsequent part of the section declares that the said parties shall appoint commissioners who shall have power to apportion roads and hands. These two parts of the section are evidently merely directory. And if the Justices should fail to comply with them, and yet should "discontinue" a road, or should "determine some matter relative to a road,"

nobody would say that the act of the Court would necessarily be void.

So, the intermediate part of the section harmonizing with these, is also itself no more than directory.

At least this is true of it, except as to the cases of " new roads" and " alterations of old roads."

The words of the part include only applications for " new roads" and for " alterations in old roads"; and the duty they impose on the persons to be appointed examiners by the Court is such, that it admits of being discharged only in reference to new roads or alterations of old roads. That duty is, to find out whether the road will be of public utility, and if it will, " to mark out the same."

Then these persons are to be of those who reside " in the neighborhood where such road is intended to pass." To *pass* is the word.

The case of an application for the *discontinuance* of an old road, is therefore not in the words, nor, as it seems, in the meaning.

In truth, this is a case in respect to which the Court does not need the aid of third persons. This is a case in which there is no road marking to be done. And on the question of utility, the Court can, in all cases, investigate for itself.

There is nothing, then, in the Act of 1818, that repeals the grant of power given to the Inferior Court by the first section of the Act of 1799, or that restricts the grant of power given to that Court by the twenty-ninth section of the Act of 1818 itself. This is true, at least, so far as the case of an application for discontinuing an old road is concerned.

But, it was argued for the defendant in error, that even if the Inferior Court had the power to make the order, it was a power they could exercise only at a regular term, or an adjourned term.

The same twenty-ninth section of the Act, however, says that the power may be exercised by the Court, " either in term time or while sitting for ordinary purposes, or at any special meeting held for that purpose."

[1.] The conclusion is, that the Court had the power to make this order, although it had not appointed persons to report on the subject of the order, and although it was sitting, not in term time or at an adjourned term, but " in chambers" at a special meeting; and therefore that the order was valid.

And if the order was valid, the injunction was manifestly wrong, for it in effect nullified the order.

This being so, there was no equity in the bill; and therefore, the Court erred in not dissolving the injunction.

But even supposing that this order was void, does it follow that there was equity in the bill? I doubt it. In that case what more could the complaining party ask than to have the nullity of the order *declared.* With that declared, the most he would ever have to do would be to notify the road commissioners of the obstructions; the rest would soon be done to his hand by the agency of the overseer of the road. The ninth section of the Act of 1818 is in the following words:

" When any person shall hereafter make any fence, or cut any tree, or make other obstructions in or across any public road, the commissioners may be notified of the obstructions, if the same do not come under their knowledge or any one of them, (and unless removed in two days) such persons shall, for every such offence, pay a fine not exceeding twenty dollars, to be recovered by warrant under the hand and seal of any Justice of the Peace, to be applied as herein directed; and it shall be the duty of the overseer of the road forthwith to cause the said obstruction to be removed."

And how easy it would be for him to get the nullity of the order declared without any help from a Court of Equity. He would have but to apply to the Court that made the order, and ask the Court to rescind it; and if the Court refused to do so, then to take his case before a higher Court. And this application he could make to the Court while it was sitting in term, or sitting as a Court of Ordinary, or sitting in special meeting.

Surely one who has the means of such relief at Law, cannot with truth say that his means of relief at Law are not

adequate; and that therefore, he must be allowed to go into Equity.

And then the question, whether a particular road shall remain a road or shall be discontinued as a road, as well as other questions of a kindred character, is a question that no Court but the Inferior Court can determine. Suppose a Court of Equity, when such a question is presented to it, issues an injunction, of what avail is the injunction? Does it reach the Inferior Court? Injunctions reach only parties. But of what avail is it to enjoin parties, on a question over which they have no control?

The last ground taken in the motion to dissolve the injunction was, that the injunction was affirmative—directing acts to be done by the party enjoined.

[2.] "It is to be observed, that the Court will not, by injunction granted upon an interlocutory application, direct the defendant to *perform* an act." "In the case of *Ryder vs. Bentham*, Lord *Hardwicke*, upon a motion for an order to pull down certain blinds, observed that he never knew an order to pull down any thing, on motion. Lord *Thurlow*, in a subsequent case, upon a motion to restrain a party from digging a ditch, and to compel him to put every thing in the same state in which it was before, by filling up so much as he had already dug, refused the latter part of the motion. So, in another case, Lord *Eldon* refused an order specifically to repair the banks of a canal, stop gates and other works."

This is the language of *Daniel* in his work on *Chancery Practice;* and we think it contains a true statement of the law on the question to which it refers, which is the question now under consideration. (3 *Danl. Ch. Pr.* 343.)

If it does, then this makes another reason why the injunction was improperly granted, for the injunction directs the defendant in the bill to remove the obstructions from the road.

Upon the whole, we reverse the judgment of the Court below.