SAULSBURY, RESPESS & Co. vs. BLANDYS.

1. Where the drawer of a draft added thereto a clause reciting that the money thereby procured was for the purchase of provisions and commercial manures to enable him to make a crop, creating a lien on all stock then on his plantation in Twiggs county, as security, parol testimony was admissible to show what stock was included in such description.

2. Where property was sold and delivered to a third person on the faith of the promise of defendants to accept his draft on them for the purchase money, a specific performance of the contract will be enforced.

3. The evidence on the disputed point being conflicting, a new trial was properly refused.

Contracts. Specific performance. Evidence. New trial. Before Judge GRICE. Bibb Superior Court. October Term, 1877.

Reported in the decision.

E. F. BEST; HALL, SON & POE, for plaintiffs in error.

LANIER & ANDERSON, HILL & HARRIS, for defendants.

WARNER, Chief Justice.

This was a bill filed by the complainants against the defendants praying for the specific performance of an alleged parol contract to accept a draft to be drawn by one Wimberly on the defendants, for the sum of $1,170.21, the price of a certain steam engine which the plaintiffs allege they sold and delivered to said Wimberly (who is insolvent), in pursuance of said contract, and in consideration thereof. On the trial of the case, the jury, under the charge of the court, found a verdict in favor of the plaintiffs. A motion was made for a new trial on the several grounds stated therein, which was overruled, and the defendants excepted.

There were two questions made on the trial of the case, to-wit: did the defendants agree to accept the draft

of Wimberly for the price of the engine, which was delivered to him by the complainants, unconditionally, without any mortgage? or did they agree to accept it with such a mortgage lien as is herewith attached to the draft, or upon condition that a separate, distinct mortgage should be executed by Wimberly to them? Upon these questions the evidence in the record is conflicting. The complainants offered in evidence the following instrument, which, the evidence shows, was drawn up by the defendants for Wimberly to sign, and delivered it to complainants' agent, but which defendants did not accept:

$1,170.20                    " Macon, Ga., October 18, 1871.

" Six months after date next, please pay to the order of myself $1,170.20, for value received, as an advance on my crop, to be raised in the year 1872, including your commissions for the same, for the purchase of provisions and commercial manures to make a crop; and for the purpose of securing the payment of this draft, I hereby create a lien in your favor, with authority to transfer the same, on my crop of cotton and other crops growing or to be grown by me, or in which I may have an interest, as also on my stock of all kinds, now on my plantation in Twiggs county, consisting of    .    .    .    .    .    .    And I agree to deliver at your warehouse, before the maturity of this draft, a sufficiency of cotton to pay the same, which cotton you are hereby authorized to sell at discretion for that purpose. If I fail to pay this draft punctually at maturity, it is to bear interest from date, and I agree to pay all costs and counsel fees incurred in its collection; and, as a further inducement for you to accept this draft, I state that I am not indebted to any other person or persons for like advances, and that I fully recognize the criminal liability in disposing of any part of said crop or crops while subject to this lien.

" [Signed]                    F. B. Wimberly. [L. S.]

" To Saulsbury, Resspess & Co., Macon, Ga.

" Executed in presence of S. M. Farrar, Not. Pub." Indorsed, " F. D. Wimberly."

1. Renfro testified, over defendants' objections, that Wimberly had on his plantation, during the year 1871, fifteen or sixteeen head of mules. There was no error in admitting this testimony for the purpose of showing what stock it was on his plantation mentioned in the draft—at least, that the mules there were intended to be included in the terms "my stock."

2, 3. The court charged the jury as follows:

"The law is, that parties must comply substantially with their contracts, and they can only insist on a substantial compliance by the other contracting party. I say substantial, because neither party can excuse himself from performance by some immaterial failure to keep the very terms of the agreement by the other party. What is a substantial performance is a question for the jury under the particular circumstances of the case. To apply this doctrine to the present case: If S. R. & Co. promised to accept for plaintiffs' agent a draft on Wimberly, and on the faith of this promise the agent let Wimberly have a steam engine, S. R. & Co. must comply with their agreement, or pay the amount of the draft, unless they can show some good reason for not accepting it. The agent in the case put undertook to procure from Wimberly the draft, and to present it for acceptance. If such was the agreement, it makes no difference that the draft then was not in existence.

"But the agent was bound to present such a paper as the defendant agreed to accept, and to present it in a reasonable time. What would be a reasonable time in one case might not be reasonable in another. This would depend, in a great measure, on the use to be made of the draft by S. R. & Co., the injury likely to come of delay, the time of the year, when this is material, and the other circumstances of the actual case. So, you see, the great question in the case is as to the intention and contract of the parties. Was the draft the paper S. R. & Co. promised the agent to accept, or was there to be a separate mortgage? S. R. & Co. might well have preferred the separate mortgage, as in some contingencies

it would have been more valuable to them.   If the agreement was to have a mortgage, strictly so called, then the draft alone was not sufficient.   But if they merely stipulated for a mortgage, they would have had it by accepting the lien draft, if the property was identified.

" The burden of proof is on the plaintiffs, and they must prove the contract which they seek to enforce, and the terms of it.   Of course, if the promise to accept was unconditional, they were bound to accept, mortgage or no mortgage, provided the agent had parted with his engine on the strength of such promise.

" If there is a conflict in the testimony—such a conflict as cannot be reconciled—then see which witnesses are right and which wrong, and give your verdict accordingly.

" Other things being equal, disinterested witnesses are to be preferred to those who are interested in the judgment to be rendered.   But the great rule is to ascertain who is right and who wrong.   Truth is the object to be attained ; wherever this is found seize it, no matter what witness it comes from.   You are to consider the means of knowledge, the intelligence of the witnesses, and all other circumstances of the case, and give credence to those who, in your opinion, are best entitled to it."

In view of the evidence contained in the record, we find no substantial error in the charge of the court.   The case was fairly submitted to the jury for their consideration, who were the proper judges of the evidence, as testified to by the respective witnesses who were sworn in the case, and according to the uniform rulings of this court their verdict should not be disturbed.

Let the judgment of the court below be affirmed.