## DAVIS, receiver, vs. TIFT.

1. W. applied to T. for a loan of money. The latter was willing to oblige him, but being unable to control his funds immediately, said that if W. could get the money elsewhere, he would refund it in a few days. W. applied to a firm, made known to them these facts, and obtained the amount, which was charged on the books to T., to whom they looked for reimbursement. W. left, and in a few days the firm applied to T. for the money, and the latter responded in writing that he had told W. that he could not get the amount before the fourth of December following, or perhaps some days later:

*Held*, that if the loan was made to T., and W. was not held liable for it by the lending firm, and there was enough in T's conduct to authorize this conclusion upon the part of the firm, then T's was an original undertaking, and not an agreement to answer for the debt, default or miscarriage of another.

2. A promise in writing to answer for the debt of another need not state the considerations therefor, but the fact of the undertaking being in writing does not preclude inquiry as to whether a consideration for the promise in fact exists; and a promise to pay the pre-existing debt of another, without any detriment or inconvenience to the creditor, or any benefit secured to the debtor in consequence of the undertaking, is a mere *nudum pactum.*

(*a.*) If the promise of T. to see the money paid was given before the loan was made, and furnished the inducement to the firm to part with their money, and they performed their part of the contract made with T., directly or through his agent, then he would be bound, irrespective of any acknowledgment in writing.

March 20, 1883.

Debtor and Creditor. Contracts. Statute of Frauds. Before HENRY MORGAN, Esq., Judge *pro hac vice.* Dougherty Superior Court. October Term, 1882.

Reported in the decision.

G. J. WRIGHT; D. H. POPE, for plaintiff in error.

JONES & WALTERS, for defendant.

HALL, Justice.

Wight applied to his brother-in-law, C. W. Tift, for the loan of a thousand dollars to aid a firm in Chicago, of which he and Welch & Bacon, merchants of Albany, Ga., together with Scolly, were members. Tift was willing to oblige him, but being unable to control his funds immediately (they being on deposit with N. & A. F. Tift & Co.), said to him, if he could get the money elsewhere, he would refund it in a few days. Wight applied to Welch & Bacon, made known to them these facts, and they advanced the amount, charging it on their books to C. W. Tift, and looking to him to reimburse them. As soon as Wight received the money, he left for Chicago. In a few days thereafter, Welch & Bacon applied by written note to C. W. Tift for the money, who replied in writing that he told Wight, before he left, that he could not get the

amount before the 4th of December, and, perhaps, not until some days later, to which he said: "All right; let us have it as soon as you can," "which," Tift added, "I will do." Welch & Bacon failed, and their effects went into the hands of John A. Davis, as their receiver, who brought this suit.

Among others, the defendant filed pleas that ne never authorized Welch & Bacon to advance Wight this or any other amount of money; that he never received said sum or any part thereof; that it was not advanced for his benefit, nor at his solicitation, nor did he know the advance was, or was intended to be, made and charged to him, until after it was done, nor did he ever promise to pay it to Welch & Bacon, or any one else; that, if any such advance was made, it was so done for the individual benefit of Wight, and that defendant never promised or agreed in writing to answer for the default or miscarriage of Wight; that shortly after the advance was made to Wight, Bacon, one of the firm of Welch & Bacon, wrote defendant a note, asking for the payment of said sum of money, stating that Wight had told his firm that defendant would pay the same on a cer: tain day; to which defendant replied in writing, that he did not authorize the advance, and did not consider himself bound for it, but that he had promised Wight, not Welch & Bacon, that he would relieve him by paying it for him when he could do so; that this is defendant's recollection of the matter as it occurred.

The evidence in the case is substantially as stated above.

Henry Morgan, Esq., who tried this case as judge *pro hac vice*, charged the jury: "If they believed from the evidence that the defendant did not agree with Welch & Bacon to get the money and let Wight have it, and agree with them that he would pay it back, and only negotiated and agreed with Wight about the money, then there was no privity between Tift and Welch & Bacon, and the plaintiff could not recover, especially if Tift only intended to

accommodate Wight with the loan "; and he refused to charge, as requested in writing by plaintiff's counsel, " that if Tift authorized Wight to get from Welch & Bacon, or any one else, the money, and he got it from Welch & Bacon, informing them that Tift would pay it, that would be a sufficient consideration to support a written promise by Tift." He also refused to charge, as requested in writing by plaintiff's counsel, " that if they should believe from the evidence that Tift, the defendant, authorized Wight to get the money from Welch & Bacon, or any one else, and Wight got it from Welch & Bacon, and Tift afterwards, in writing, promised to pay the same, then he is liable," but added thereto, as a qualification, the words, " for a consideration."

1. This charge of the court does not fully present the case in its various aspects to the jury, and restricts them to only one of its several phases. If the loan was made to Tift, and Wight was not held liable for it by Welch & Bacon, and there was enough in Tift's conduct to authorize this conclusion upon the part of Welch & Bacon, then Tift's was an original undertaking, and not an agreement to answer for the debt, default or miscarriage of another person. Were Welch & Bacon authorized to look to Tift alone for the payment of this money, or did they look to Wight also? If the former is true, Tift was bound; but if the latter was the case, then he was not bound. This is the test laid down by Lord Holt in the leading case of Birkmyr *vs.* Darnell, Salk., 27; 1 Smith's Lead. Cases, (4th Am. ed.), p. 316. "The question," says Sergeant Williams in his note to Forth *vs.* Stanton, 1 Wm. Sanders, 211, " is, what is the promise? Is it a promise to answer for the debt, default or miscarriage of another, for which that other remains liable? Not what the consideration for that promise is; for it is plain that the nature of the consideration cannot affect the terms of the promise itself, unless, as in the case of Goodman *vs.* Chase, 1 B. and A., 297, it be an extinguishment of the liability of the original

party." Butcher *vs.* Stewart, 11 M. & W., 857. Notes to Birkmyr *vs.* Darnell, 1 Smith's Lead. Cases, 317.

2. A promise in writing to answer for the debt, etc., of another, need not, under our law, as in England, state the consideration for the promise. *Black vs. McBain*, 32 *Ga.*, 128. But the fact of the undertaking being in writing does not preclude inquiry as to whether a consideration for the promise in fact exists, as in the case of a promise to pay the pre-existing debt of another, without any detriment or inconvenience to the creditor, or any benefit secured to the debtor in consequence of the undertaking. Parker *vs.* Carter, 4 Munf. (Va.), 273; Chandler, 2 Hen. & M. (Va.), 273. Such a promise, according to all the authorities, is mere *nudum pactum.* 1 Addison on Con., §1; sub-sec. 3, p. 9.

If, therefore, Tift's undertaking was to pay a loan made to Wight, after it was made, and without any new consideration, it was a nude pact, and not binding, although in writing; but if his promise to see it paid, before it was made, was the inducement to Welch & Bacon to part with their money, and they performed their part of the contract made directly with Tift, or through his agent, then he is bound, irrespective of any acknowledgment in writing. Code, 1951, par. 2; *Saulsbury, Respess & Co. vs. Blandys,* 60 *Ga.*, 646.

Inasmuch as these questions were not fully submitted to the jury, this charge is not full and complete, and to the extent that it fails to call attention to these issues, is erroneous.

As the case goes back for another hearing, we refrain from expressing any opinion upon the other grounds of the motion for a new trial.

Judgment reversed.