THE GEORGIA PACIFIC RAILWAY *vs.* THE MAYOR, etc., OF DOUGLASVILLE

1. After a bridge has been completed, it is too late to obtain an injunction to prevent its completion; and it is not within the power of a chancellor at chambers to grant a mandatory order requiring a municipal corporation to remodel or remove any part of a bridge forming a part of one of its streets.
2. The testimony as to the safety of the bridge in controversy being conflicting, there was no abuse of discretion in refusing an injunction.
(a.) On the final trial, the equitable rights of all parties may be determined.

October 27, 1885.

Municipal Corporations. Practice in Superior Court. Injunction. Roads and Bridges. Before Judge HARRIS. Douglas County. At Chambers. May 23, 1885.

Reported in the decision.

J. S. JAMES, for plaintiff in error

W. A. JAMES; C. D. CAMP, for defendants.

JACKSON, Chief Justice.

After the completion of a bridge over the track of the Georgia Pacific Railway Company, it filed a bill against the town of Douglasville to restrain its being used and have it remodeled and rebuilt as to hight and certain timbers, alleged to be dangerous, as in the way of officers of the company in signalling each other, removed, etc.

1. We say after the completion of the bridge, because such is the sworn answer or affidavit of the officers of the town and of the contractors to build the bridge. Therefore, in respect to any order to desist from completing the bridge, the application is too late, and in regard to remodeling or removing any part of the bridge, it is not within the power of a chancellor, under the laws of this state and our practice in equity at chambers, to grant such mandatory orders. *Thomas vs. Hawkins*, 20 *Ga.*, 126, 134(2); Code, §3002.

2. The evidence before the chancellor, touching the safety of the height of the bridge as it stands, is, to say the least, conflicting; and in such cases, this court does not interfere with his discretion unless it is abused. There are certainly sufficient sworn allegations in the answer of the town and depositions on their side to show that the chancellor did not act recklessly, or, in the legal sense of the phrase, abuse his discretion; and therefore, under our uniform practice, we decline to reverse his conclusion not to grant an injunction.

It does not follow that the bill may not have equity touching the modification of the bridge, if it be the duty of the town to build it for the convenience of the citizens; and that a decree on the final trial before the jury predi-

cated on their verdict may not be rendered to that end; nor, on the other hand, inasmuch as complainant comes into equity, is it necessary for the town to proceed against it for the expense of the bridge, and the cost of remodeling the same, should it be held the duty of the company to erect the bridge or make a suitable crossing where the street, near the court-house square, crosses the track of its road.

These matters will be adjudicated on the hearing, and the court of equity, with the facts found by the jury under the ruling of the chancellor, will then decree the several and exact equity of each party.

At present we merely affirm the denial of the writ of temporary injunction, and refrain from examining questions of law and equity, and determining them, until the facts are all developed on a full and fair examination before the court and jury.

Judgment affirmed.