## SIMMONS *v.* LINDSAY *et al.*, trustees.

1. Where a person in his individual capacity was one of two grantors in a deed, and in his capacity as a trustee of a church was one of the grantees, his attestation as a justice of the peace of such deed, along with an unofficial witness, was not sufficient to authorize the deed to be recorded; and a certified copy of such deed from a record so made was not admissible in evidence.
2. Where in an equitable petition the sole prayer for injunction was that the defendant should be enjoined from maintaining an obstruction across a private right of way, which obstruction consisted in a fence completed before the filing of the petition, it was erroneous to grant an interlocutory injunction mandatory in its character, and amounting to a direction to the defendant to remove the fence.

(a) It did not appear that there was not an adequate remedy for the abatement of the obstruction as a nuisance, or, perhaps, for its removal as an obstruction of a private way, in some mode provided by the statutes, and that a resort to equity for relief was necessary.

MARCH 15, 1916.

Injunction. Before Judge Wright. Floyd superior court. June 30, 1915.

Lindsay and others, as trustees of the Armuchee Baptist Church, brought an equitable petition against W. H. Simmons, alleging the following, among other things: On June 1, 1854, Willis Selman and James W. Selman conveyed to the then trustees of the church, of whom the plaintiffs are successors, a certain described lot of land. The deed, after describing the land, contained the following words: "together with the free privilege of the spring north of said church, and also the right of way to the same." At the date of the deed there was a public road leading from the church to the spring, which was continuously used by the trustees, members, and congregation of the church as the right of way to the spring until 1914, when the defendant, who had bought the land on which the spring was located (acquiring it under a chain of title from the Selmans), erected a fence across the road, and completely obstructed it, thereby preventing the members of the church and the congregation from reaching the spring on foot or in vehicles, and thus depriving them of the use of the spring to obtain water for themselves and their stock; and they have been compelled to go a distance of about a quarter of a mile to a private well, where they have been able to obtain water only by the kindness of the owner of it. The spring and the right of way have been open to and used by the general public for more than sixty years as a place at which to obtain water for themselves and their stock, without objection from the owner of the land, until the defendant purchased it and erected the fence. The public school of the district is now, and for a number of years past has been, located adjacent to the property owned by the church, and the right of way and the spring have been used by the children continuously for sixty years or more. The closing of the way deprives not only the plaintiffs but also the school children and the general public of such use. The prayers were, that the defendant be enjoined from maintaining the obstruction across the right of way, and for general relief and process.

The defendant demurred to the petition, and answered it. For want of sufficient information, he did not admit or deny the making by the two Selmans of the deed under which the plaintiffs claimed. He admitted that in 1914 he erected, and has since maintained, a fence around the spring, but he alleged that he erected gates so as to admit members of the church or any other person who had a right to go to the spring, and that it only required the lifting of a latch in order to pass through such gate. He averred that he did not intend to deprive the members of the church from getting water at the spring, but was willing for them to do so, and had prepared a place on the side of the road outside of the fence for the watering of stock. He denied that the members of the church were compelled to go some distance to get water. He alleged that the pupils of the school, without legal authority, overran the premises daily, committing all manner of depredations and acts of nuisance, until the situation became intolerable, and that his sole object in constructing the fence around the spring was to protect it and the spring-house, where he kept milk and vegetables, from being subject to trespass and intrusion from the school children and the general public. He further alleged that the members of the church and the congregation had at all times visited the spring; that the church only met (except on rare occasions) once a month; and that it would only require one of the plaintiffs to open the gate twelve times during the year in order to reach the spring, while, under the conditions existing before the building of the fence, the defendant's property was overrun practically every day by persons having no authority to do so.

Upon the hearing the presiding judge ordered that the defendant should be enjoined as prayed until the further order of the court. The defendant excepted.

*M. B. Eubanks,* for plaintiff in error. *Maddox & Doyal,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. The deed under which the plaintiffs claim was made by Willis Selman and James W. Selman to themselves and others as trustees of the church. James W. Selman, one of the grantors, and also, in his capacity as trustee, one of the grantees, attested the deed as a justice of the peace; and two unofficial witnesses also attested it. On this attestation it was recorded. It appearing that the original deed was lost, the presiding judge admitted, over

objection, a certified copy from the record. It is clear that a man can not be at once a grantor as an individual, a grantee as trustee, and an attesting witness as a justice of the peace, and thus authorize the recording of the deed. Not being properly recorded, a certified copy from the record could not be introduced in evidence, and its admission was error. Whether, under the averments of the answer, the introduction of the certified copy would require a reversal need not be considered.

2. The sole prayer for injunction was that the defendant be enjoined "from maintaining said obstruction across said right of way." It is declared by the Civil Code (1910), § 5499: "An injunction can only restrain; it can not compel a party to perform an act. It may restrain until performance." It has been held, that, if the main purpose of an equitable petition is to compel the performance of an act, injunction can not be used as a remedy to accomplish that purpose; but that while the court can not, on an interlocutory hearing, issue a purely mandatory injunction, he can grant an injunction the essential nature of which is to restrain, although in yielding obedience to the restraint the plaintiff may be incidentally required to perform some act. *Goodrich* v. *Georgia R. Co.*, 115 *Ga.* 340 (41 S. E. 659). In *Georgia Pacific Ry. Co.* v. *Mayor etc. of Douglasville*, 75 *Ga.* 828, it was held that it was too late, after a bridge had been completed, to obtain an injunction to prevent its completion; and that it was not within the power of the chancellor at chambers to grant a mandatory order requiring a municipal corporation to remodel or remove any part of a bridge forming a part of one of its streets. In *Russell* v. *Napier*, 80 *Ga.* 77 (4 S. E. 857), where a fence had been erected across a private right of way, it was said, that, while the plaintiff in error might sue for this nuisance, a court of equity might interpose and stop it by injunction; that a mandatory injunction would make the defendant remove any obstruction, and a final injunction would prevent him from thereafter interfering with the plaintiff's rights. The case arose on demurrer to an equitable petition which sought to obtain specific performance and injunction. It was not brought to this court by exception to the grant of an interlocutory injunction; and what was said by Blandford, Justice, in the opinion must be taken in connection with the facts of the case. It can not be treated as a general adjudication that a man-

datory injunction may be granted at an interlocutory hearing to compel the removal of a fence already completed across a private way, where the main purpose is not to restrain a party from doing something, but to compel him to do an affirmative act; and especially where there is an adequate legal remedy of which he may avail himself. If there is essential conflict between that decision and the previous one in the 75 *Ga.,* supra, the one last mentioned, which was earlier in point of time, must prevail.

Provision is made by the code for abating public or private nuisances. Civil Code (1910), §§ 5329, 5338; *Ruff* v. *Phillips,* 50 *Ga.* 130; *Powell* v. *Foster,* 59 *Ga.* 790. It has been declared that such a remedy is available to cause the removal of an obstruction from a private way. *Salter* v. *Taylor,* 55 *Ga.* 310; *Hart* v. *Taylor,* 61 *Ga.* 156; *Holmes* v. *Jones,* 80 *Ga.* 659 (7 S. E. 168). Persons who desire to abate a nuisance, either public or private, should resort to the remedy provided by the code, unless special facts are alleged showing that such remedy is inadequate. *Broomhead* v. *Grant,* 83 *Ga.* 451, 453 (10 S. E. 116). We need not here consider the remedy for removing obstructions from private ways, provided by the Civil Code (1910), § 825. In the present case it was not made to appear why one of the remedies above indicated was not sufficient so far as the present plaintiffs and the church which they represent are concerned. The sole prayer for injunction in its nature sought affirmative rather than preventive relief. It was not to enjoin interference with the use of the water of the spring, but to enjoin the maintenance of the fence.

It is not apparent what authority the trustees of the church would have by an equitable proceeding to set up rights on behalf of the children attending a public school near by, or on behalf of the public. In so far as the use of the way might throw light on its existence and location and the rights of the plaintiffs, perhaps they might be shown; but relief on behalf of the general public or the school children could not be granted in this proceeding.

*Judgment reversed. All the Justices concur, except*
EVANS, P. J., who dissents from the ruling of the court as contained in the second division of the opinion.