## REID *v.* McRAE.

No. 13128.   MAY 23, 1940.

324

*Whaley & Rawlins,* for plaintiff in error. *W. S. Mann,* contra.

BELL, Justice. ■ It appears from the allegations and prayers that the main purpose of the suit was to obtain the relief of specific performance, requiring the defendant to turn over "to petitioner the government check for said parity on said cotton when the same arrived and was ready for delivery," in order that petitioner might collect and have as her own the money represented thereby. If such was the nature of the agreement, it would reasonably include an indorsement of the check by the defendant. The petition alleged, in effect, that the plaintiff had paid to the defendant the full amount agreed upon as consideration for the check; and that on discovery of the fact that it called for an amount in excess of the consideration so paid, the plaintiff offered to pay the difference, but that such offer was declined by the defendant. The petition further alleged that the defendant is insolvent.

As a general rule, equity will not decree specific performance of a contract relating to personalty. Code, § 37-803; *Carolee* v. *Handelis,* 103 *Ga.* 299 (29 S. E. 935); *Gabrell* v. *Byers,* 178 *Ga.* 16 (172 S. E. 227). But there are exceptions to this rule, and insolvency alone may supply basis for an exception. In *Shockley* v. *Davis,* 17 *Ga.* 177 (63 Am. D. 233), it was held that where A agreed with B that in consideration that B would become his surety to C, A would turn over to B choses in action for his indemnity, and where A was in failing circumstances, a court of equity would decree specific performance of the contract. In *Saulsbury* v. *Blandys,* 60 *Ga.* 646, it was held that where property was sold and delivered to a third person on the faith of a promise by the defendants to accept his draft for the purchase-money, specific performance of such contract to accept the draft might be enforced in behalf of the seller in whose favor the draft was to be issued, the purchaser being insolvent.

In *National Life Insurance Co.* v. *Beck & Gregg Hardware Co.,* 148 *Ga.* 757 (98 S. E. 266), this court sustained an action against an insurance company for specific performance of an agreement to extend or renew an insurance policy. Under these authorities, the petition stated a cause of action for specific performance; also for injunction and receiver.

The principle that creditors without a lien may not as a general rule obtain injunction or other extraordinary relief in equity is inapplicable. Code, § 55-106. The plaintiff did not sue as a creditor. According to the petition, all accounts between the parties have been settled, and in the contract of settlement the plaintiff simply became entitled to the parity check upon its issue and delivery to the defendant. Nor is there merit in the contention that the petition did not show an equitable assignment, that is, an intention of the parties to effectuate an immediate change of ownership with respect to the particular fund in question. Compare *Jones* v. *Glover,* 93 *Ga.* 484 (21 S. E. 50). It is not essential that the fund assigned shall be in actual existence at the time, but it is sufficient if it "exists potentially." *Walton* v. *Horkan,* 112 *Ga.* 814 (38 S. E. 105, 81 Am. St. R. 77) ; *Brown Guano Co.* v. *Bridges,* 34 *Ga. App.* 652 (2), 656 (130 S. E. 695. The agreement, *if given effect* according to its terms, did not leave the assignor with any right of control of the fund, either by revocation or collection, but as between the parties his only authority was to receive the check, and then to indorse and deliver it to the plaintiff. Accordingly, *Reviere* v. *Chambliss,* 120 *Ga.* 714 (48 S. E. 122), is not in point. We think the allegations were sufficient to show an equitable assignment; but this is not to imply that even if the petition should be construed otherwise, it would be defective as a suit for specific performance.

Neither the Federal government nor any agency of it was sued or made a party defendant. Nor does the defendant's check represent a salary of an officer or government employee. Consequently the case does not come within the principle that the salary of such an officer or employee can not be made the subject of a garnishment or receivership. *Dotterer* v. *Bowe,* 84 *Ga.* 769 (11 S. E. 896) ; *Morgan* v. *Rust,* 100 *Ga.* 346 (28 S. E. 419) ; *West* v. *Floyd,* 186 *Ga.* 190 (197 S. E. 236).

The court did not err in overruling the demurrer to the allega-

tions and prayers for injunction and receivership. Compare *Bell* v. *Dawson Grocery Co.*, 120 *Ga.* 628 (48 S. E. 150); *Arnwine* v. *Beaver*, 134 *Ga.* 377 (67 S. E. 937); *Brandt* v. *Hofmayer Dry Goods Co.*, 146 *Ga.* 649 (92 S. E. 53).

■ The evidence introduced on interlocutory hearing showed without dispute that the defendant had received and cashed the check even before service of the petition and the restraining order, and authorized the inference that he had spent the proceeds before the hearing. The judge held the defendant in contempt of court for having disposed of the money after knowledge of the restraining order; and so must have found that he had spent the money before the hearing, as contended by him. In these circumstances the judge erred in granting an injunction to restrain the defendant from indorsing and cashing the check, as prayed in the petition, and from disposing of the proceeds, as prayed in the amendment. The acts against which the plaintiff sought injunction having been completed before the interlocutory hearing, the prayers for injunction should have been refused. *Sims* v. *Boyd*, 177 *Ga.* 465 (2) (170 S. E. 375); *Braswell* v. *Clark*, 180 *Ga.* 727 (180 S. E. 486); *Georgia Pacific Railway Co.* v. *Douglasville*, 75 *Ga.* 828; *Simmons* v. *Lindsey*, 144 *Ga.* 845 (2) (88 S. E. 199); *Shurley* v. *Black*, 156 *Ga.* 683 (2) (119 S. E. 618). But it does not follow that the defendant could not be held in contempt, provided the other facts authorized an adjudication to that effect. The question of contempt will next be considered.

■ The only restraining order was that issued on the original petition, restraining the defendant from indorsing or cashing the check except to indorse and deliver it to the plaintiff; no injunctive order having been passed on the amendment. The defendant had cashed the check and received the proceeds before he was served and before he was informed that the restraining order had been granted. After knowledge of the order, however, he disposed of the proceeds; and for having done so he was attached and held in contempt. The question is whether the judge was authorized to find that the act of the defendant in disposing of the proceeds constituted a violation of the order restraining him from indorsing and cashing the check. We think so. According to the plaintiff's evidence, she had purchased the defendant's right to the parity payment, and had fully paid the agreed consideration. Whether she

was bound to pay more when it developed that the sum payable to the defendant exceeded their estimate, the evidence showed that she did offer to pay the difference, and that the offer was refused. In these circumstances the plaintiff acquired an equitable title to the right of the defendant to the parity payment, which equitable title attached to the check on its delivery to the defendant, and embraced the proceeds on collection of the check by him; and this is true regardless of whether the original transaction amounted to an equitable assignment, as indicated in division 1 of this opinion. *Pitts* v. *McWhorter,* 3 *Ga.* 5 (46 Am. D. 405); *Winter* v. *Jones,* 10 *Ga.* 190 (54 Am. D. 379); *Floyd* v. *Floyd,* 97 *Ga.* 124 (2) (24 S. E. 451); *Ogden* v. *Dodge County,* 97 *Ga.* 461 (25 S. E. 321); *Grace* v. *Means,* 129 *Ga.* 638, 642 (59 S. E. 811). The check was a mere paper, without value except for the money it represented; and so its proceeds or the right to the proceeds constituted the substantial matter in controversy. In 32 C. J. 492, § 857, it is stated: "In order to authorize punishment for a violation of an injunction, the acts complained of must be clearly embraced within the restraining clause of the injunction. Whether or not particular acts constitute a violation of an injunction depends largely upon its special provisions. In determining whether there has been a breach or violation of an injunction, the decree or order for injunction is to be construed with reference to the nature of the proceeding and the purpose of the injunction; and it is important to consider the objects for which the relief was granted as well as the circumstances attending it. While the language of the decree or order should not be extended to cover acts not fairly and reasonably within its meaning, the violation of the spirit of an injunction, even though its strict letter may not have been disregarded, is a breach of the mandate of the court, which will not allow its process to be disregarded or evaded on merely technical grounds. No subterfuge amounting to a substantial violation of an injunction will be allowed to succeed simply because not contrary to the letter of the prohibitory clause. One who violates the letter of an injunction in reliance on his judgment that he does not violate its spirit acts at his peril; and if mistaken, his good faith is not a defense. He can not set up his opinion as to the meaning of the injunction against the court's opinion; but if he has any doubt as to what he may do without violating the injunction, he should ask a modifica-

334

tion of the injunction or a construction of its terms." It is further stated (p. 495, § 863) : "Where the conveyance or disposal of property is enjoined, a conversion of the property, a conveyance or transfer intended to confirm one made prior to the injunction, delivery of the property sold before the injunction issued, offer to sell the property, or voluntarily allowing the property to be taken by one having no right to do so, may constitute a breach or violation of the injunction. Such an injunction is violated by any active interference by defendant or his agents for the purpose of having the legal title transferred to another."

In the recent case of *Patten* v. *Miller*, 190 *Ga.* 150 (8 S. E. 2d, 786), this court said that if the plaintiff in error "entertained any doubt as to what he might or might not do under the order, he should have asked for a modification or a construction of its terms. . . In cases of contempt the trial judge is vested with a discretion in determining whether his orders have been violated and how such infringements should be treated; and it has been said that this court will not disturb his judgment, unless it appears that he has abused his discretion." Compare *Warner* v. *Martin*, 124 *Ga.* 387 (52 S. E. 446, 4 Ann. Cas. 180). In *Blood* v. *Martin*, 21 *Ga.* 127, a plaintiff in attachment, who was enjoined from selling the attached property, stood silently by and saw the levying officer sell the property. It was held that he violated the injunction. In *Baker* v. *Weaver*, 104 *Ga.* 228 (30 S. E. 726), the owner of a mill-pond sought injunction to restrain another from cultivating land adjacent to the pond and from clearing away the trees and undergrowth near the banks. The court granted an injunction restraining the defendant from cutting the trees and undergrowth, but refused an injunction as to cultivating the land. The plaintiff himself was not expressly enjoined from doing anything; but after such refusal to enjoin cultivation, he increased the height of the mill-pond, and thus overflowed the land so as to prevent the defendant from cultivating it. It was held by this court that such action by the plaintiff "was clearly a violation of the order of court, and was a contempt." It was said: "The court had full power to order him to lower the dam so as to restore the status which had existed at the time the injunction was refused, and, if he refused or failed to obey this order, to attach him for contempt. *Johnson* v. *Hall*, 83 *Ga.* 281 [9 S. E. 783]." The order restraining the defendant from

indorsing and cashing the check reasonably comprehended disposition of the proceeds, and under the evidence the court did not err in adjudging the defendant to be in contempt. See *Murphey* v. *Harker,* 115 *Ga.* 77 (6, 7) (41 S. E. 585); *Nance* v. *Daniel,* 183 *Ga.* 538 (189 S. E. 21). It follows from what has been said, that the judgment granting an interlocutory injunction must be reversed, but that in all other respects it should be affirmed.

*Judgment affirmed in part and reversed in part. All the Justices concur.*