PHINIZY *et al.*, executors, *v.* GARDNER *et al.*

PER CURIAM. 1. One who is the owner of the easement of burial in a cemetery is entitled to recover damages from any one who wrongfully interferes with such right. *Jacobus* v. *Congregation of the Children of Israel*, 107 *Ga.* 518 (33 S. E. 853, 73 Am. St. R. 141); *Stewart* v. *Garrett*, 119 *Ga.* 386 (46 S. E. 427, 64 L. R. A. 99, 100 Am. St. R. 179). If such trespass is a continuing one, a court of equity will enjoin it. *Stovall* v. *Caverly*, 139 *Ga.* 243 (77 S. E. 29). If we concede that the plaintiff had an adequate remedy at law for the removal of the fences erected by the defendant across the private way to the cemetery, such remedy would not give adequate relief to the plaintiff for the continued plowing and cultivation of the roadway. Such relief could only be obtained in equity.

2. Where the main purpose of the injunction is not to require affirmative action, but to restrain the defendant from repeating a trespass, the in-

junction is not a mandatory one, although compliance with it may require some affirmative action on the part of the party enjoined, such as the removal of a fence across the roadway to a cemetery. *Spencer* v. *Tumlin,* 155 *Ga.* 341 (116 S. E. 600).

*Judgment affirmed. All the Justices concur, except Hill, J., dissenting.*

No. 4158.　OCTOBER 17, 1924.

Equitable petition. Before Judge Franklin. Richmond superior court. January 1, 1924.

Mrs. Mary B. Gardner and others brought an equitable petition against Jacob Phinizy, and alleged in substance the following: Oswald Eve, on March 10, 1826, conveyed by deed, which was recorded, to Catherine Fitzsimmons, Joseph Eve, Anderson Watkins, John Carmichael, Gilbert Longstreet, John Bones, Ann P. Cunningham, Sara Adams, and John P. Eve, and "their and each of their heirs forever, as joint tenants," the following described realty and right of way, to wit, "one acre of land eastward of my summer residence, and near thereto, and known as the family cemetery or burying-ground, which said acre of land they, or a majority of them, may at any time hereafter lay off and enclose in square form, or nearly so, enclosing the monuments already erected there, upon the following conditions only: that the aforesaid acre of land shall not hereafter be appropriated to any other use than that of a burying-ground as hereinbefore contemplated and expressed. I do also annex to the foregoing the privilege of a wagon or carriage road through any lands that I now or may hereafter own, from the nearest public road to the aforesaid cemetery or burying-ground, forever; reserving to myself the same or equal privileges in the use of said burying-ground heretofore granted to them, and none others." At the date of the deed Oswald Eve owned the land lying between the cemetery lot and the Savannah road on the west, which was the nearest public road; and the wagon or carriage road referred to was located from the cemetery lot in a northwesterly direction, passing in front of the summer residence, also called the "cottage," and extending out into the Savannah road; and said wagon or carriage road was used continuously from the date of the deed until some time in the year 1922. The tract of land through which the wagon or carriage road ran subsequently became the property of Sara Adams, one of the heirs and legatees of Oswald Eve; and Sara Adams by her will dated January 2, 1851, and probated March 7, 1851, in the

court of ordinary of Richmond County, devised the land with this proviso: "that the piece of ground now appropriated as a family burying-ground, together with an acre of land adjoining, to be laid off by my executors, shall be reserved for the purposes of a graveyard only, and that a right of way from the Savannah road be always reserved over the intervening land for the passage of funerals." In 1922 the defendant, without previous knowledge by plaintiffs of his intention, built a wire fence across the wagon or carriage road at the western line of the cemetery lot and at the eastern line of the Savannah road, and otherwise obstructed the same by felling trees and plowing, so that the wagon or carriage road could not be used for any purpose whatever. The wagon or carriage road as finally agreed upon, located, and used by the then owners of the land through which it extended was 25 feet wide, and ran in a practically straight line as an avenue through the woods from the Savannah road easterly in front of the residence known as the "cottage" and on to the line of the cemetery lot. Each of the plaintiffs is a lineal heir of one of the grantees in the deed from Oswald Eve, and is entitled to use said cemetery as a burial lot and to use the wagon or carriage road as a means of access thereto; and they bring this action in their own right and for the benefit of others having the same rights. The defendant had both constructive and actual notice of the location and existence of the wagon or carriage road before he purchased the land through which it runs, and before he obstructed the same. The injury to plaintiffs by the closing of the roadway is, from its nature, irreparable in damages, and they have no adequate remedy at law. The prayers were: (1) That the defendant be required to remove said obstructions to the roadway and restore it to its former condition. (2) That he be permanently enjoined from maintaining any obstructions to the roadway. (3) For process.

The defendant having filed demurrers both general and special, the plaintiffs amended their petition and alleged, among other things, that Sara Adams was one of the grantees under the deed of Oswald Eve of March 7, 1826, and the tract of land over which the road passes was devised by her in her said will to her two nieces, Hannah B. Longstreet and Emma E. Longstreet, during their lives, with remainder to their children, as contained in paragraph 8 of the will, which contained the following: "provided that

the piece of ground now appropriated as a family burial-ground, together with an acre of land adjoining, to be laid off by my executors, shall be reserved for the purposes of a graveyard only, and that a right of way from the Savannah road to said graveyard be always reserved over the intervening land for the passage of funerals," etc. At the date of the making of the will the road through the tract of land then in use was the same road referred to in the deed of Oswald Eve of March 10, 1826, and said road had been in constant use for that intervening period and continued in such use up to the time defendant committed his trespass by closing the same. The plaintiffs are descended from the grantees in the above-described deed. It is further alleged that "all of the immediate grantees in the said deed from Oswald Eve dated [died] many years ago, and none of them ever conveyed or attempted to convey said cemetery lot or the easement thereto in the right of way extending out to the Savannah road." The defendant holds the land under a deed from L. W. Mays, dated December 19, 1921, and recorded, and Mays held under a deed from E. J. Dorris and A. T. Heath, dated November 28, 1921, also recorded, containing the following provision: "There is excepted from the conveyance, and reserved, one acre of land in the form of a square, embracing the family cemetery, and with a right of way and use of road leading from the cemetery to the Savannah road." E. J. Dorris and A. T. Heath held under a deed from James L. Sibley and Mrs. Mattie Sibley, dated October 23, 1919, and recorded, conveying 58-1/4 acres known as the cottage tract, but containing the following provision: "except one acre in the form of a square, with all timber thereon, which is the old family burying-ground, together with the right of way in perpetuity over and across the land herein conveyed, from the Savannah road to the cemetery; said right of way to be for the use and benefit of all persons desiring to use the aforesaid cemetery;" and the reservation of the right of way was record notice to Jacob Phinizy and said Sibley held under partition proceedings of the land of Sara Adams, and the return expressly stated that "title to the cemetery is in no way altered." The right of way was an easement running with the land by written grant and reservation as heretofore set out, and was not merely a right of way by prescription over the land of another, though it had been used for the purposes

stated for nearly, if not more than, a hundred years; and the action of the defendant in closing up the road was not merely an obstruction of the road, but was a trespass upon the property right of these plaintiffs and was a nuisance in law and is now a continuing nuisance. The plaintiffs further prayed, that the defendant be restrained permanently from continuing the trespass and the operation of the nuisance, and that he be restrained from further interfering with the rights of plaintiffs to the use of the right of way from the Savannah road to the cemetery of their ancestors; and that if the court should hold that equitable relief would be afforded by permitting the defendant to place a gate in the fence at each end of the road, then they prayed for such equitable relief.

The defendant demurred to the petition upon the grounds, among others: that it appears on the face of the petition that plaintiffs have an adequate remedy at law; that the only relief sought by the petition was mandatory injunction, that the petition seeks, not to restrain, but to perform acts; that the petition fails to allege that the grantees, or any of them, other than Sara Adams, are dead, and, if deceased, that such other grantees died testate or intestate, and, if intestate, that there are no administrations on their respective estates; and with respect to Sara Adams the petition fails to show to whom she devised the easement reserved when devising the servient land, or to whom such alleged easement passed at her death. An amendment was filed to meet the special demurrer. The court overruled the demurrer, and the defendant excepted.

*Hamilton Phinizy,* for plaintiff in error.

*William H. Fleming,* contra.

HILL, J., dissenting. I can not concur in the judgment of affirmance in this case. Did the court below err in overruling the demurrer to the petition? That depends upon whether the plaintiffs have an adequate remedy at law; or whether the relief sought is *mandatory* in its nature, and forbidden by the Civil Code (1910), § 5499. The Civil Code (1910), § 824, provides: "Whenever a private way has been in constant and uninterrupted use for seven years or more, and no legal steps have been taken to abolish the same, it shall not be lawful for any one to interfere with said private way." And § 825 provides: "In the event the owner

or owners of land over which such private way may pass, or any other·person, shall obstruct, close up, or otherwise render said private way unfit for use, the party or parties injured by such obstructions, or other interference, may petition the ordinary in the county where such private way has been in use, to remove such obstructions; and, upon the petition being filed, the ordinary shall issue a rule nisi, directed to the party or parties complained against (which rule shall be served by the sheriff or his deputy), calling upon the offending parties to show cause why said obstructions should not be removed, and the free use of·said private way be reestablished.   Said rule shall be served at least three days before the day set for the hearing, and when the day arrives the ordinary shall proceed to hear evidence as to said obstruction or other interference; and if it should appear that said private way has been in continuous, uninterrupted use for seven years or more, and no steps taken to prevent the enjoyment of the same, then the ordinary shall grant an order directing the party or parties so obstructing, or otherwise interfering with said right of way, to remove said obstructions or other interference within forty-eight hours; and in the event of failure so to remove said obstructions, the ordinary shall issue a warrant·directed to the sheriff, commanding him forthwith to remove said obstructions."   Under the above sections of the code it has been, held by this court that where one has used a private way for more than thirty years through the improved lands of another, without gates or other obstructions, the erection of gates or fences across such way by another would give the prescriber the right to have such obstructions removed.   *Hill* v. *Miller,* 144 *Ga.* 405 (87 S. E. 385).   In *Puryear* v. *Clements,* 53 *Ga.* 232, the defendant had recently built two gates across the private way which was on the land of the defendant, besides removing a causeway which had been built across a ditch.   The commissioners of Walker County, who had jurisdiction of the subject-matter, ordered the gates removed and the causeway restored.   This court reversed the judgment of the superior court, on the ground that the plaintiffs could not require the defendants, who had built the causeway, to rebuild it for plaintiff's benefit; but in delivering the opinion of the court in that case it was said:   "If the plaintiffs had a good prescriptive right to use the defendant's private way, then the defendant would not have had the right to obstruct their use of it

by the erection of gates thereon." The Civil Code (1910), § 3641, provides that "The right of private way over another's land may arise from express grant; or from prescription by seven years uninterrupted use through improved lands, or twenty years use over wild land; or by implication of law when such right is necessary to the enjoyment of lands granted by the same owner; or by compulsory purchase and sale through the ordinary in the manner prescribed by this code." In the instant case the right of way, according to the allegations of the petition, is by express grant. It seems, therefore, that if plaintiffs have an easement in the land under the grant from their ancestors, they would have an adequate remedy at law for having obstructions removed from the right of way as described in the petition.

Another section of the code which bears upon this subject is § 5329, which provides that "Any nuisance which tends to the immediate annoyance of the citizens in general, is manifestly injurious to the public health and safety, or tends greatly to corrupt the manners and morals of the people, may be abated and suppressed by the order of any two or more of the justices of the peace of the county, founded upon the opinion of twelve freeholders of the same county, who shall be summoned, sworn, and impaneled for that purpose; which order shall be directed to and served by the sheriff of the county, or his deputy." In *Salter* v. *Taylor, 55 Ga.* 310, it was held: "The stopping or impeding a private way is a private nuisance. Such a nuisance may be abated by a proceeding before two justices of the peace and a jury, under sections 4094 and 4098 of the code." In that case Taylor contracted with Salter for a right of way through the latter's land, and it was laid out, and Taylor incurred some expense in causewaying some of it. He used it for two years, when Salter erected a fence across it. Taylor proceeded, under § 4094 and the subsequent sections in the same chapter of the code, to have the fence abated as a nuisance, by a petition to two justices of the peace, who summoned a jury, and they passed upon the case, and the fence was, by order of the court, under the finding of the jury, to be abated. Salter carried the case by certiorari to the superior court; that court sustained the verdict and judgment below, and this ruling was assigned as error. In delivering the opinion of the court in that case Judge Jackson said: "Was the fence a private nuisance? Blackstone says, 'a nuisance

signifies anything that worketh hurt, inconvenience, or damage.' And again he says, 'If I have a way annexed to my estate, across another's land, and he obstructs me in the use of it, either by totally stopping it, or putting logs across it, or plowing over it, it is a nuisance.' Chitty's Blackstone, 3d book, 215, 218. This fence then was a nuisance. . . Did Taylor pursue the proper remedy? By the common law, he could have sued in case for damages, or he could have had a writ, called an *assize of nuisance,* commanding the sheriff to summon a jury, to try the case and abate the nuisance, if found to be one. Chitty's Blackstone, 221. The remedy is very similar with us. The petition is addressed to two justices of the peace, who summon the jury, try the case, and abate the nuisance; or if the injured party wish, he may sue in case. In this case he proceeded to abate the nuisance under the Code, sections 4094, 4098. This court has decided that he has this remedy to abate a private nuisance. 50 Georgia Reports, 130."

The case of *Russell v. Napier,* 80 *Ga.* 77 (4 S. E. 857), is relied on by the defendants in error as authorizing a court of equity to interpose in such a case as the present by injunction. In that case it was held, that, "Although the closing of the right of way may have been a nuisance for which an action at law might have been maintained, yet it was a continuing nuisance, which would authorize a court of equity to interpose by injunction." In *Simmons v. Lindsay,* 144 *Ga.* 845 (88 S. E. 199), this court held: "Where in an equitable petition the sole prayer for injunction was that the defendant should be enjoined from maintaining an obstruction across a private right of way, which obstruction consisted in a fence completed before the filing of the petition, it was erroneous to grant an interlocutory injunction mandatory in its character, and amounting to a direction to the defendant to remove the fence." In delivering the opinion of the court in that case Mr. Justice Lumpkin said: "The sole prayer for injunction was that the defendant be enjoined 'from maintaining said obstruction across said right of way.' It is declared by the Civil Code (1910), § 5499: 'An injunction can only restrain; it can not compel a party to perform an act. It may restrain until performance.' It has been held, that, if the main purpose of an equitable petition is to compel the performance of an act, injunction can not be used as a remedy to accomplish that purpose; but that while the court can not, on an

interlocutory hearing, issue a purely mandatory injunction, he can grant an injunction the essential nature of which is to restrain, although in yielding obedience to the restraint the plaintiff may be incidentally required to perform some act.  *Goodrich* v. *Georgia R. Co.*, 115 *Ga.* 340 (41 S. E. 659). In *Georgia Pacific Ry. Co.* v. *Mayor etc. of Douglasville*, 75 *Ga.* 828, it was held that it was too late, after a bridge had been completed, to obtain an injunction to prevent its completion; and that it was not within the power of the chancellor at chambers to grant a mandatory order requiring a municipal corporation to remodel or remove any part of a bridge forming a part of one of its streets." Judge Lumpkin in the case just cited refers to the case of *Russell* v. *Napier*, supra, where he says: "In *Russell* v. *Napier*, 80 *Ga.* 77 (4 S. E. 857), where a fence had been erected across a private right of way, it was said, that, while the plaintiff in error might sue for this nuisance, a court of equity might interpose and stop it by injunction; that a mandatory injunction would make the defendant remove any obstruction, and a final injunction would prevent him from thereafter interfering with the plaintiff's rights. The case arose on demurrer to an equitable petition which sought to obtain specific performance and injunction. It was not brought to this court by exception to the grant of an interlocutory injunction; and what was said by Blandford, Justice, in the opinion must be taken in connection with the facts of the case. It can not be treated as a general adjudication that a mandatory injunction may be granted at an interlocutory hearing to compel the removal of a fence already completed across a private way, where the main purpose is not to restrain a party from doing something, but to compel him to do an affirmative act; and especially where there is an adequate legal remedy of which he may avail himself. If there is essential conflict between that decision and the previous one in the 75 *Ga.*, supra, the one last mentioned, which was earlier in point of time, must prevail. Provision is made by the code for abating public or private nuisances. Civil Code (1910), §§ 5329, 5338; *Ruff* v. *Phillips*, 50 *Ga.* 130; *Powell* v. *Foster*, 59 *Ga.* 790. It has been declared that such a remedy is available to cause the removal of an obstruction from a private way. *Salter* v. *Taylor*, 55 *Ga.* 310; *Hart* v. *Taylor*, 61 *Ga.* 156; *Holmes* v. *Jones*, 80 *Ga.* 659 (7 S. E. 168). Persons who desire to abate a nuisance, either public

or private, should resort to the remedy provided by the code, unless special facts are alleged showing that such remedy is inadequate. *Broomhead* v. *Grant*, 83 *Ga.* 451, 453 (10 S. E. 116). We need not here consider the remedy for removing obstructions from private ways, provided by the Civil Code (1910), § 825. In the present case it was not made to appear why one of the remedies above indicated was not sufficient so far as the present plaintiffs and the church, which they represent, are concerned. The sole prayer for injunction in its nature sought affirmative rather than preventive relief. It was not to enjoin interference with the use of the water of the spring, but to enjoin the maintenance of the fence." And see, to the same effect, *Smith* v. *Parlier*, 152 *Ga.* 100 (3) (108 S. E. 515). The language of Judge Lumpkin in the *Simmons* case is very appropriate to the case at bar. The prayers of the petition are, to remove the obstruction in the right of way of the plaintiffs, and to permanently enjoin the defendant from maintaining any obstruction to the roadway; and the amended prayers are to permanently enjoin defendant from continuing the operation of the nuisance "by permitting defendant to place a gate in the fence at each end of the road." I am of the opinion that this relief is mandatory in its nature, and that under the provisions of the code and the decisions of this court a court of equity will not compel by injunction the doing of affirmative acts. To require the defendant to remove the obstruction or to place gates at each end of the right of way would be mandatory in its nature and forbidden by our law. I am also of the opinion that the plaintiffs have an adequate remedy at law by either of the methods pointed out in the code, the one not being exclusive of the other, and therefore that the court below erred in not sustaining the demurrer and dismissing the petition.