PEEBLES *v.* PERKINS.  GRAY *v.* PERKINS.

ATKINSON, J.   An owner of land caused it to be divided into lots and sold
at public outcry with reference to a recorded plat showing the lots.   On
the land was a mill-pond; also a mill and gin operated by water-power
afforded by the pond.   In the division lot number one was the mill-pond
which separately from the mill was valuable for fishing and hunting.
The mill and gin were located on lot number three.   The two lots were
sold to separate persons on the same day, the sale of lot number one
being first in the order of time.   In normal conditions of rainfall and use
of the water for the mill and gin the water covered a certain area.   In
subnormal conditions of rainfall the use of water necessary to operate
the mill and gin would cause the water-covered area of lot number one
to be reduced and to the extent that possibly not exceeding 15 per cent.
of the normal area would be covered, thereby destroying the value of the
pond for fishing.   The deed conveying lot number one to the purchaser of
it contained the clause:   "It is a condition and covenant running with
the land herein conveyed that the party of the second part, his heirs,
executors, administrators, and assigns shall never change said dam of
said pond in such a way as to interfere with the full and free use of the
water running from said pond by the owner of the property known as
lot No. 3 in said subdivision of the property of Mrs. Jennie McCants,
and that the owner of the property known as No. three (3) of the sub-
division of the Mrs. Jennie McCants property shall have the right to
keep said dam in repair and to do such work thereon as may be neces-
sary from time to time in order that he the owner of parcel No. three (3)
of said subdivision of Mrs. McCants property may have the full use of
the water in operating such gin, mills, and other property as are now on
the property known as parcel No. three (3) of said Jennie McCants sub-
division or that may hereafter be erected thereon.   That the party of the
second part, his heirs, and administrators, and assigns shall never have
the right to so change said dam as to interfere with the operation of
mills, gins, and property now located on property No. three (3) of Mrs.
Jennie McCants subdivision or that may be erected thereon; and should
changes be made by the party of second part, his heirs, executors, and
administrators and assigns, it shall be with the consent of the owner of
parcel No. three of the subdivision of Mrs. Jennie McCants property,
and shall be done without expense to the owner of said parcel after his
consent thereto has been obtained."   *Held:*

1. This was a restrictive covenant with the grantor, embraced in the deed
to the grantee of lot number one, essentially for the benefit of the lot
number three.

2. The grantee of lot number one, by accepting the deed containing the cove-
nant and possession of the property thereunder, became bound by the

Appeal and Error, 3 C. J. p. 1282, n. 24.
Covenants, 15 C. J. p. 1251, n. 68.
Deeds, 18 C. J. p. 384, n. 86; p. 393, n. 8; p. 396, n. 43.
Injunctions, 32 C. J. p. 207, n. 91 New; p. 362, n. 64.
Waters, 40 Cyc. p. 572, n. 49; p. 639, n. 8; p. 671, n. 26.

covenant without his having signed the deed. Civil Code (1910), § 4180; *Phillips* v. *Blackwell*, 164 *Ga.* 856 (139 S. E. 547).

3. Being of the character just indicated, the covenant enured to the benefit of the grantor and also to any purchaser from the grantor of lot number three. *Phillips* v. *Blackwell*, supra.

4. In the circumstances a purchaser of lot number three from the grantor could in equity sue the grantee of lot number one, to prevent a violation of the covenant. *Rosen* v. *Wolff*, 152 *Ga.* 578 (110 S. E. 877); *Phillips* v. *Blackwell*, supra. The case upon its facts is distinguishable from and the above ruling is not in conflict with the decisions in *Gunter* v. *Mooney*, 72 *Ga.* 205; *Hawkins* v. *Central of Georgia Railway Co.*, 119 *Ga.* 159 (46 S. E. 82); *Cooper* v. *Claxton*, 122 *Ga.* 596 (50 S. E. 399); *Douglass* v. *Williams Art Co.*, 143 *Ga.* 846 (85 S. E. 993); *Shropshire* v. *Rainey*, 150 *Ga.* 566 (104 S. E. 414).

5. Under the covenant the grantor or purchasers from him of lot number three have a superior right to the water in the pond, in the sense that in so far as necessary to operate the mill and gin the water in the pond may be drawn off to the lowest limit that the dam as constructed at the time of the grant would permit, and that the grantee of lot number one or his successors in title could not alter the dam to prevent such use of the water without consent of the grantor as owner of lot number three or those claiming under him.

(*a*) The case involving a special covenant, the general principles embodied in the Civil Code (1910), §§ 3633, 4475, relating to rights of upper and lower proprietors on unnavigable streams, have no application.

(*b*) It would be an unauthorized obstruction for the grantee of lot number one, or his grantee with notice of the restrictive covenant, to erect in the pond in front of the raceway a concrete dam that would prevent the flow of water through the raceway for operating the mill and gin at the lowest level that the dam would permit at the time of the grant.

6. Where the erection of such obstruction would result in causing the mill or gin to shut down and the damage flowing therefrom to be incalculable, a proper case for injunctive relief would be presented. Injunctive relief would not be inappropriate because it might incidentally require the defendant to do the affirmative act of removing the obstruction. *Phinizy* v. *Gardner*, 159 *Ga.* 136 (125 S. E. 195), and cit.

7. The judge did not err in refusing to enjoin the grantee of lot number three from using the water as complained of for operating his mill.

8. There was no error in overruling the demurrer to the petition to enjoin the maintenance of the obstruction to flow of water from the pond into the mill raceway.

9. The judge was authorized, under the pleadings and the evidence, to grant a temporary injunction against maintenance of the obstruction mentioned in the preceding division, but at the interlocutory hearing he was not authorized to grant a permanent injunction.

(*a*) The effect of the order was to grant a permanent injunction.

(*b*) The judgment granting the injunction is affirmed with direction that it be so modified as to enjoin the defendant only until the further order of court.

10. It has been held by this court: "When a judgment refusing an inter-

locutory injunction is brought to the Supreme Court for review, the trial judge is authorized to grant a supersedeas upon such terms as may by him be deemed necessary to preserve the rights of the parties until the judgment of the Supreme Court can be had. Civil Code, § 5502. It is left, however, in the sound legal discretion of the judge to grant or refuse it." *Prater* v. *Barge,* 139 *Ga.* 801 (78 S. E. 119). On the subject generally see *Tift* v. *Atlantic Coast Line Railroad Co.,* 161 *Ga.* 432 (6) (131 S. E. 46). Upon principle the above-quoted rule applies also where the exception is to the grant of a temporary injunction, and the correctness of the decision depends solely upon a question of law. The judge did not abuse his discretion in refusing a supersedeas in this case. *Judgment affirmed in case No. 6113. Judgment affirmed with direction in case No. 6222. All the Justices concur except Hill, J., dissenting.*

Nos. 6113, 6222. NOVEMBER 15, 1927.

Injunction. Before Judge McLaughlin. Taylor superior court. August 6, 1927.

The lands of the estate of Mrs. Jennie McCants, deceased, were surveyed and divided into lots and a blue-print made, and after being advertised the lots were sold at executor's public sale with reference to the plat in September, 1926. On lot number one was a mill-pond known as the "McCants' mill-pond," which was valuable for "fishing and hunting." Lot number three contained the mill-house and gin-house with all the machinery therein, which was operated by water-power afforded by the pond. I. F. Peebles became the purchaser of lot number one, and E. C. Perkins became the purchaser of lot number three. The deed to Peebles expressed the consideration as $4,500, and purported to convey lot number "one (1) situate, lying, and being in the County of Taylor and State of Georgia, and shown by a plat and blue-print of the property of Mrs. Jennie McCants, deceased, recorded in" the general records for deeds in the county. Following the above description of the property the deed contained the clause quoted in the decision, supra. In 1927, on account of a continued drought, the water supply became insufficient to both keep the pond up to its normal depth and supply sufficient water to run the machinery of the mill. Notwithstanding such condition Perkins as owner of the mill continuously used the water-power until the pond was "almost dry," so that it did "not cover more than 12 or 15 per cent." of the space which the water normally covered. Perkins was intending to continue the use of the water as long as the power was sufficient to turn the machinery at all. It was

his daily practice, when the water got too low to run the machinery, to close down the water gates, wait until the pond filled sufficiently to run his machinery again, then raise the gates and use the water as long as it would run the machinery. He purposed to continue this process of operating his mill by draining the pond as above indicated. The effect of draining the pond was to destroy the fish and render the fishing privileges in the pond valueless, causing incalculable and irreparable damage to Peebles as owner of the fish-pond. In the sale lot number one was the first lot cried off by the auctioneer. Peebles instituted a suit against Perkins, for injunction to prevent the use of the water for operating the machinery until the pond filled to its normal depth, and from thereafter draining the pond below its normal depth for the purpose of operating the machinery. The petition alleged all that is stated above, and alleged a right to the relief sought, not only on the ground of irreparable injury as above indicated, but also in order to avoid a multiplicity of actions. At an interlocutory hearing the defendant made a motion to deny the injunctive relief, on the ground that the petition as amended did not allege cause for such relief. The court sustained this motion, and error was assigned upon this ruling.

After the bill of exceptions was certified, Perkins instituted a suit against Peebles. The petition alleged purchases of lots one and three as above indicated, and set out copies of deeds to the respective parties, both bearing the same date. It was alleged in paragraph four, "that notwithstanding the covenants, restrictions, limitations in the deed of said defendant, that he has built, caused or permitted to be built a cement dam in front of the mill-race or carrier of water to petitioner's mill or to the water-house on said mill, thereby shutting petitioner's mill down and absolutely prohibiting the use of or the running of said mill; and also prohibiting the use of the water from the pond." It was also alleged that the plaintiff had an established business, and that a continuance of the obstruction of the flow of water to the mill would destroy the business and cause incalculable and irreparable injury. The prayer was that the defendant be restrained from obstructing the free passage of the water to the mill. The bill of exceptions sued out in this case states that Peebles filed a plea of disclaimer, showing to the court "that he had deeded all

the property in question" to W. F. Gray, and that upon filing such plea Gray was made a defendant, and that Gray filed a demurrer to the petition and a plea and answer. The demurrer was upon the ground that the petition failed to allege a cause of action, and that the relief prayed was based upon conditions or covenants in the deed from the executor to Peebles, to which the plaintiff was neither a party nor privy at law. The answer alleges that Gray "admits he has a concrete dam out in the pond in front of the race, but denies that said dam prohibits the use of or the running of plaintiff's mill; also denies that said dam prohibits the use of the water running from the pond by plaintiff," and denies generally that he has violated any of the covenants in the deed or damaged the plaintiff. The answer further alleges "that plaintiff is operating his mill every day that he desires to operate it, and leaves his gates to the race up all night each night, and thereby wastes a lot of water, as plaintiff's water-house is in very bad condition, and a stream almost if not equal to the size of the stream feeding the pond, when in normal condition, runs through the water-house, even when the mill is not running; and notwithstanding all this waste of water, plaintiff has plenty water to run his mill at any and all times." The court overruled the demurrer. The case was heard on an agreed statement of facts, "that said defendants erected a cement dam 3-1/2 to 4 feet in height in front of the mill-race through which water from McCants' pond flowed to McCants' mill owned by plaintiff; that dam was connected to the butment of a cement bridge, and in the front of said mill-race, to which was connected the mill-dam; that said cement dam erected by defendants makes a complete obstruction and prevents the water being used in the operation of plaintiff's mill until the water in said pond is of sufficient depth to pass over said cement dam in sufficient quantity to keep and maintain pressure in the water-house next to plaintiff's water-wheel." On interlocutory hearing the court ordered and adjudged that W. F. Gray be "restrained and enjoined from preventing or obstructing the use of the water from said pond in the operation of plaintiff's machinery in any way whatsoever." Gray assigned error on the judgment overruling the demurrer. Error was also assigned on the judgment granting the injunction; the grounds of exception being: (a) The order is a permanent injunction. (b) The order

necessarily compels the performance of an affirmative act such as the removal of the obstruction complained of, in violation of the Civil Code (1910), § 5499. (c) The order is contrary to the evidence and without evidence to support it. Error was also assigned upon a refusal of the judge to grant an application for a supersedeas of the judgment until the decision of the Supreme Court should be rendered.

· *C. W. Foy,* for plaintiffs in error. *Homer Beeland,* contra. ·.

HILL, J. I dissent from so much of the opinion of the majority of the court, expressed in the ninth division, as holds that on a hearing for temporary injunction the court could order the removal of the concrete dam built in front of the mill-race. In my opinion such temporary injunction is mandatory, and forbidden by the Civil Code (1910), § 5499; and for the reasons given in my dissenting opinion in the case of *Phinizy* v. *Gardner,* 159 *Ga.* 136, 140 (supra), I can not agree with the views expressed by the majority of the court on this question.