MADDOX *v.* FIRST NATIONAL BANK OF JEFFERSON.

No. 3283.   October 17, 1940.   Rehearing denied November 20, 1940.

*Joe Quillian,* for plaintiff in error.

*George W. Westmoreland,* contra.

BELL, Justice. The First National Bank of Jefferson filed a suit in equity against Y. D. Maddox, praying for injunction to restrain the defendant from obstructing a private way, and "from building back said obstructions as they are moved by the officers of the law or your petitioner." The court overruled general and special demurrers to the petition, sustained a general demurrer to the answer which included a cross-action, and granted an interlocutory injunction. To these orders the defendant excepted. The allegations in the petition may be summarized as follows: The plaintiff bank had previously filed with the ordinary of Jackson County a proceeding seeking removal of obstructions from an alleged private way. That ordinary, being disqualified, requested the ordinary of Banks County to assume jurisdiction; and this was done. After hearing, an order was entered directing the removal of obstructions as prayed in the application. Maddox refused to obey the order, and an attachment for contempt was filed. This proceeding was in like manner referred to the ordinary of Banks County, because of disqualification of the ordinary of Jackson County. Maddox was adjudged to be in contempt, but still did not obey the order. The ordinary of Banks County finally issued an order directing the sheriff to remove the obstructions, consisting of gates, but the defendant "immediately reconstructed said gates, placing them back in the same position as they have already been. Wherefore petitioner removed obstructions, and as petitioner removed said obstructions defendant rebuilds, and has stated that he will rebuild them as often as they are removed." The petition further alleged "that the acts on the part of the defendant is a continuous nuisance, and to continue citing him before the ordinary would be of no avail and would only pile up a multiplicity of actions without obtaining any redress." While, as indicated above, the defendant assigned error on the striking of his answer and cross-action, the brief filed in his behalf contains no argument or insistence upon this point, and is therefore treated as abandoned:

Under a proper construction, the petition did not attempt to assert an original right in reference to a private way, but was based solely on the orders of the ordinary. Hence the present case differs from cases like *Nevels* v. *Golden,* 147 *Ga.* 34 (92 S. E. 521,

*Dodson* v. *Evans,* 151 *Ga.* 435 (107 S. E. 59), *Phinizy* v. *Gardner,* 159 *Ga.* 136 (125 S. E. 195), and *Campbell* v. *Deal,* 185 *Ga.* 474 (195 S. E. 432), involving private ways. According to the view which we take of the case, the controlling question is whether the ordinary of Banks County had authority under the law to assume jurisdiction of the application for removal of obstructions, which had been filed in Jackson County with the ordinary of that county, where the latter officer was disqualified. Under the Code of 1910, such action would have been authorized, and the precise legal question is whether the law in this respect was changed and repealed by adoption of the Code of 1933.

The Code of 1910 provided as follows: "When any ordinary is disqualified to pass upon any matter presented to him as such ordinary, he shall indorse such disqualification upon the papers, and the ordinary of any adjoining county shall pass upon the same and certify, to the ordinary of the county where the business arose, his action in the matter, who shall record the same, and enter the proceedings on the minutes if need be. When any ordinary is disqualified to try any case or issue pending before the court of ordinary, such ordinary shall call upon the ordinary of any adjoining county to preside on the hearing of such case or issue: Provided, whenever an ordinary is disqualified or from sickness or other causes is incapacitated to act in any cause, the county judge or city-court judge, and, if there be no such courts, then the clerk of the superior court of such ordinary's county may exercise all the jurisdiction of ordinary in such cause, and in such event it shall not be necessary for the ordinary to call in the ordinary of the adjoining county." Civil Code (1910), § 4785. This section was a codification of three statutes: Ga. L. 1889, p. 100 (Code of 1895, § 4227) Ga. L. 1897, p. 52; Ga. L. 1907, p. 106, all of which are substantially set forth *In re Williams,* 139 *Ga.* 524 (77 S. E. 624), and need not be restated here. In place of the section as it appeared in the Code of 1910 we find the following in the Code of 1933: "Whenever an ordinary is disqualified or from sickness or other causes is incapacitated to act in any cause, the county judge or city-court judge, and, if there be no such courts, then the clerk of the superior court of such ordinary's county may exercise all the jurisdiction of ordinary in such cause." § 24-1710. It will be noticed that in this section there is no reference whatever to the

ordinary of "adjoining county," and that so far as here expressed, where the ordinary of a given county is disqualified, only the county judge or city-court judge, or, if there be neither of such courts, then the clerk of the superior court of such county is authorized to assume jurisdiction.

The Code of 1933, after approval by a Code Commission, was by the General Assembly "adopted and made of force as the Code of Georgia, having the effect of statutes enacted by the General Assembly of this State." Ga. L. 1933, p. 31, § 1; Code, § 102-101. Compare *Central of Georgia Railway Co.* v. *State*, 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518). Questions as to the effect of codification and the adoption of codes have been considered many times by this court. In *City of Cochran* v. *Lanfair*, 139 *Ga.* 249, 258 (77 S. E. 95), it was said: "No arbitrary and inflexible rule has been applied to the determination of whether or not an act or a part of an act omitted from the Code was repealed by the adoption of the book. Probably no Procrustean rule can be announced on the subject. The general presumption is that the codifiers codified the laws existing, rather than made new ones. Some changes were undoubtedly made, and were adopted by the legislature. Some were apparently intentionally made, and some were so palpably changes that they negatived the idea of mere clerical omission." There is one general rule, however, that is always applicable, and that is, to ascertain the intention of the General Assembly. Code, § 102-102 (9). In *Lamar* v. *McLaren*, 107 *Ga.* 591, 599 (34 S. E. 116), it was said: "Unless the contrary manifestly appears from the words employed, the language of a Code section should be understood as intending to state the existing law, and not to change it." In *Mechanics Bank* v. *Heard*, 37 *Ga.* 401, 413, it was said of the Code of 1863 that it should be kept in mind that the codifiers had no authority to originate new matter for legislative sanction, and that it was incumbent upon any one asserting that they went beyond their commission to prove such contention. In *Atlanta Coach Co.* v. *Simmons*, 184 *Ga.* 1 (190 S. E. 610), applying these principles, it was said by Russell, Chief Justice, that if the question of change "is left in doubt and uncertainty," "this fact alone is a conclusive reply to the proposition that a change in the law was effectuated." Where an intention to change appears, it must be given effect, not because of any power

of legislation vested in the codifiers or the commission, but because of the adopting statute. Even if such persons or officers may have intended to cause a change in the law, it does not necessarily follow that the legislature sanctioned or executed such proposal by them. "The proposed change must have been so conspicuous as to demand the inference that it was noticed by the lawmaking body, before the presumption against a change may be overthrown." *Clark* v. *Newsome,* 180 *Ga.* 97, 102 (178 S. E. 386); *State* v. *Camp,* 189 *Ga.* 209 (2) (6 S. E. 2d, 299).

In view of the foregoing rules, what conclusion should be drawn in the present case? After a careful comparison of the old and the new section, we are satisfied that a change in the law was intended by the General Assembly. There are two decisions which seem to be directly in point: *Miller* v. *Southwestern Railroad Co.,* 55 *Ga.* 143; *Kennedy* v. *McCardel,* 88 *Ga.* 454 (14 S. E. 710). By an act of 1856 it was declared that for the negligent killing of a person by a railroad company, when there was no widow, child or children, the right of action was vested in the legal representative of the deceased. As codified in the Code of 1863, § 2913, it was declared that "A widow, or if no widow a child or children, may recover for the homicide of the husband or parent." The words, "if no child or children, it shall vest in his legal representative," were omitted. In the *Miller* case, supra, it was held that this operated to limit the right to recover for the homicide of another to the widow of the deceased. By the act of 1854 it was declared what officials might attest a deed for the purpose of record. One of these was a clerk of the inferior court. The Code as adopted omitted that official from those whose attestation would suffice to authorize record. In the *Kennedy* case, supra, it was held that the difference between the Code and the act was not attributable to oversight or mistake, but to an obvious purpose to change a previous law, the whole subject being deliberately considered and dealt with by the codifiers, and that the code would control. There is a clear conflict between the Codes of 1910 and of 1933, on the subject here under consideration. Under the former, the ordinary of an adjoining county might act in such case, while under the terms of the latter no such provision is made. More than this, it is perfectly obvious that in adopting the Code of 1933 there was an intention on the part of the General Assembly to change the exist-

ing law. In the Code of 1910 the section dealing with the subject contained 181 words, whereas in the corresponding section of the later Code there were only 53 words. The new section skipped more than the first half of the old, and then, after using a part, omitted the concluding clause. The parts deleted both referred to the ordinary of an adjoining county, while the portion that remained contained no reference to that officer. As to meaning, the very core of the former section was omitted, and the proviso with alterations was substituted for the whole. If the section had not appeared at all in the Code of 1933, or if the changes had been less noticeable, a different question would have been presented; but since the section was actually dealt with and "palpably changed," the inevitable conclusion is that a change in the law was intended by the General Assembly. See further, *McAfee* v. *Flanders*, 138 *Ga*. 403 (75 S. E. 319); *Georgia Railroad & Banking Co.* v. *Wright*, 124 *Ga*. 596 (5) (53 S. E. 251); *Orr* v. *Riley,* 160 *Ga*. 480 (128 S. E. 669); *Lamar* v. *Allen*, 108 *Ga*. 158 (5), 163 (33 S. E. 958); *Horn* v. *State*, 114 *Ga*. 509 (40 S. E. 768); *City of Atlanta* v. *Goodman*, 183 *Ga*. 834 (189 S. E. 829).

It follows from what has been said that the original proceedings, so far as they embraced trial before the ordinary of Banks County and the orders by him, were coram non judice and void, and that the suit in equity based solely upon such proceedings and orders did not state a cause of action. The court erred in overruling the general demurrer to the petition and in granting an interlocutory injunction. See *Little* v. *McCalla*, 20 *Ga*. *App*. 324 (93 S. E. 37); *Rowland* v. *State*, 38 *Ga*. *App*. 131 (142 S. E. 917); *Day* v. *Smith*, 172 *Ga*. 467 (157 S. E. 639).

*Judgment reversed. All the Justices concur.*