64054. HABERSHAM MEMORIAL PARK, INC. et al. v. MOORE et al.

SHULMAN, Presiding Judge.

Appellee-plaintiffs are the widow and the children of H. P. Moore. Appellants, Habersham Memorial Park, Inc. (Habersham) and C. O. Kelley (Kelley), were defendants in the lower court. Habersham owns and operates a perpetual care cemetery. Kelley is president and sole stockholder of Habersham. Appellees instituted

the instant tort action to recover for the alleged wanton and willful disruption of and interference with the burial service for Mr. Moore. This appeal is from the entry of judgment on a jury verdict for appellees.

While not without dispute, the evidence adduced at trial authorized the following findings of fact: Mrs. Moore, the appellee-widow, was hospitalized at the time of her husband's death and was unable to make the necessary funeral arrangements personally. That responsibility was delegated to her appellee-children. After memorial services were conducted for Mr. Moore in his church, his body was taken to Habersham's cemetery for burial. Because of Mrs. Moore's health, she was unable to leave the automobile and walk to the grave site. In order that Mrs. Moore could hear the burial service, the driver of the automobile in which she was seated drove off the roadway and onto the grass a short distance. Appellant Kelley observed the vehicle on the grass and became upset. He approached the vehicle and in a loud voice began to berate the driver for parking on the grass. In addition to raising his voice, Kelley began to gesture and point his finger at the driver. When the driver tried to explain that Mrs. Moore was physically unable to leave the vehicle, Kelley retorted: "I don't care nothing about her old foot . . . you're not supposed to park up on this grass." To avoid further incident at the burial site and to forestall further disruption of the impending service, the driver responded, "just forget it . . . we'll discuss this after the service," and then turned away.

After Mr. Moore's casket had been placed on the lowering device atop the open grave, the ministers prepared to conduct the burial service from the foot rather than the head of the grave. This was being done in order that Mrs. Moore, who was forced to remain in the car, could hear the services. As one of the ministers was preparing to read from the scriptures, Mr. Kelley interjected to inform the ministers that they should conduct the services from the head of the grave. When the minister then explained why the services were being conducted from the foot of the grave, Mr. Kelley's response was to yell: "I own this property, I have rules and regulations, and you're going to abide by them . . . you're going to conduct this service from the other end of the casket . . ." The minister, after some slight hesitation, chose to ignore Mr. Kelley and began to conduct the service from the foot of the grave. Mr. Kelley then acquiesced in the procedure.

At the conclusion of the funeral services, one of the ministers who wanted "to find out what [he] had done wrong" approached Mr. Kelley and asked him "what was the problem." Mr. Kelly began to shake his finger at the minister and to yell at him. This altercation

"drew the attention of several people around." Mrs. Moore was driven away to prevent her from hearing "all that was going on, because . . . it would upset her more."

One of the appellees, Mr. Moore's son, after hearing "all [he] want[ed] to hear," inquired of the funeral director: "[D]o we have to bury Daddy here in this cemetery?" Mr. Moore's son asked that interment be delayed until the wishes of his mother could be ascertained. In a loud voice and in the presence of those still assembled at the grave site, Mr. Kelley informed the funeral director that when the funeral procession had "turned in off the highway onto his property . . . that body belonged to him and that [the funeral director] would not move it . . . [Y]ou're not going to leave here with him . . . he's going to be buried here . . ." Mr. Kelley was informed that Mrs. Moore's wishes with regard to the burial site of her husband would be honored and that if she wished the body to be removed for burial elsewhere, her desire would prevail. Mr. Kelley responded: "[Y]ou'll hear from me, big boy . . . you're asking for a lawsuit." Not until the funeral director prepared to call an attorney to the scene did Mr. Kelley agree that he would abide by Mrs. Moore's decision in the matter of her husband's burial site. Mrs. Moore in fact decided to have her husband buried elsewhere, and the following day Mr. Moore was interred in another cemetery.

1. Appellants enumerate as error the denial of their motion for a directed verdict as to all appellees. Appellants also enumerate as error the denial of their motion for a directed verdict as to all appellees with the exception of Mrs. Moore, the surviving widow. We find no error in either denial. In this state, an unlawful and unwarranted interference with the exercise of the right of burial is a tort. See *Wright v. Hollywood Cemetery Corp.,* 112 Ga. 884 (4) (38 SE 94); *Stephens v. Waits,* 53 Ga. App. 44 (184 SE 781). This right of burial belongs to the surviving spouse of the deceased and devolves upon the next of kin of the deceased only if no spouse survives. *"Except where the decedent leaves a husband or a wife surviving,* the right to properly dispose of the dead body belongs to the next of kin. [Cits.]" (Emphasis supplied.) *Wright,* supra, p. 888. See also *Pollard v. Phelps,* 56 Ga. App. 408 (1b) (193 SE 102).

Mr. Moore died leaving his widow as his surviving spouse. Accordingly, it was Mr. Moore's widow who had the right of burial in the instant case, not the remaining appellees who are his next of kin. The evidence would clearly authorize a finding that Mr. Kelley's actions were an unlawful and unwarranted interference with Mrs. Moore's exercise of this right. "[Appellants] owed [Mrs. Moore, as the holder of the right of burial,] the duty not wilfully or wantonly to interfere with the burial of [her husband]. [Cits.] The *violation of this*

*duty was a legal wrong." Stephens v. Waits,* supra, p. 46. "An unlawful and unwarranted interference with the exercise of the right of burial, even though the interference is only temporary, is a tort which gives rise to a cause of action." 25A CJS 488, 511, Dead Bodies, § 8 (2). It was not error to deny appellant's motion for a directed verdict with regard to Mrs. Moore.

Although appellants are correct that the private right to bury Mr. Moore belonged only to Mrs. Moore and that the other appellees were not entitled to recover for an interference with that right, we do not agree that a directed verdict against the other appellees was required: there was another theory of recovery advanced at trial and supported by the evidence, a theory which properly included all the appellees.

The courts of this state have recognized a right of recovery for interference with an easement of burial, the property right acquired by the purchase of a cemetery plot. *Jacobus v. Congregation &c. of Israel,* 107 Ga. 518 (33 SE 853); *Wright v. Hollywood Cemetery Corp.,* supra; *Phinizy v. Gardner,* 159 Ga. 136 (125 SE 195). The variety of the factual situations in those cases demonstrates that there is not a single act on which liability in such cases rests. In *Jacobus,* it was disinterment of the remains of ancestors; in *Wright,* refusal of admission to a cemetery; and in *Phinizy,* the building of a fence to block access to a cemetery. In the present case, the evidence showed conduct by appellant Kelley which was so odious as to utterly spoil for the appellees the use of the grave site purchased for their deceased husband and father. While the allegations of interference with the easement of burial in this case do not involve the physical interference that appeared in the cases cited above, we are unwilling to rule that the obnoxious verbal conduct of appellant Kelley was not such an interference with appellees' right to bury Mr. Moore in that particular grave that they cannot have a remedy at law. We have long recognized the concept of constructive eviction in property law. In *Roberson v. Allen,* 7 Ga. App. 142 (66 SE 542), the defendant landlord's conduct was "insulting and dictatorial" and deprived the plaintiffs of the use of the property they rented from him. We see no difference in the behavior of appellant Kelley in the present case.

The documentary evidence in this case, including the deed to the burial plot and the rules and regulations of appellant Habersham which are incorporated by reference into the deed, established that the ownership of the plot, upon Mr. Moore's death, passed to his widow and children. That being so, all the appellees shared the property right with which appellants were alleged to have interfered. It follows that the denial of appellants' motion for a directed verdict

against all the appellees except Mrs. Moore was correct.

2. The trial court gave the following charge: "There is a duty owing both to society and to a deceased person that the body of the decedent should be decently buried and unlawful and unwarranted interference with the exercise of the right of burial is a tort. The right of burial includes ordinarily the right to determine the time, manner and place of burial." Appellants urge that the charge is an erroneous statement of the law.

It is a duty owing to society and the deceased that a body be given a decent burial. "In reference to the disposition of the remains of the dead, in all civilized countries, the law has a due regard for the public health, common decency, and the feelings and sensibilities of the relatives and friends of the deceased. At common law, a corpse can not be cast out, so as to expose it to violation, or to offend the feelings or endanger the health of the living, but must be properly interred . . ." *Wright,* p. 888. See also 25A CJS 488, 507, Dead Bodies, § 5. The person having this duty to bury the deceased also has the concomitant right to give the body a "decent" burial, and the unlawful and unwarranted violation of this right constitutes a tort. See generally *Wright,* supra, Division 2; *Stephens,* supra, p. 44. This right of burial ordinarily includes the right to determine the time, manner and place of burial. See 25A CJS 488, 495, Dead Bodies, § 3. The evidence in the instant case demonstrates that as the surviving spouse, Mrs. Moore had the duty to bury her husband. The evidence would further authorize a finding that Mr. Kelley wantonly and wilfully interfered with the burial of Mr. Moore. See *Stephens,* supra. We find no error in the giving of the charge challenged by this enumeration of error.

3. In their fourth enumeration of error, appellants complain that the trial judge overemphasized in his instructions to the jury the provisions of Code Ann. § 105-2003 and that the trial judge expressed his opinion that there was an injury to the peace, happiness and feelings of the plaintiffs. Our conclusion from reading the transcript and considering the charge as a whole is that appellants have misinterpreted the trial judge's instruction. We find no error.

Concerning the allegation of overemphasis of Code Ann. § 105-2003, it is clear that the trial court was not placing emphasis on that section, but was required to repeat portions of it in several different charges, all of which were adjusted to the evidence and were correct statements of the law. The last repetition of the section came after appellants objected to the trial court's supposed expression of opinion. To ensure that the jury was not left with the wrong impression, the trial judge carefully repeated the Code section and explained to the jury that he did not mean to express any opinion as to

whether there had been any injury to any of the plaintiffs. The charge was not overemphasized.

Nor do we find any expression of opinion. The language objected to by appellants was as follows: "In some torts the entire injury is to the peace, happiness or feelings of the party, of the Plaintiff generally speaking, and in this case certainly." It is clear beyond peradventure that the trial court was merely specifying that it was the plaintiffs, as opposed to the defendants in this case, who alleged injury to their peace, happiness and feelings. The last clause of that sentence can in no way be construed as an expression of opinion that there had been such injury. The enumeration of error raising that issue is without merit.

4. A relevancy objection was sustained to a question propounded to appellant Kelley on direct examination. Error is enumerated upon the trial court's refusal to allow Mr. Kelley to give his answer to the question. No proffer of the excluded testimony was made. Accordingly, "[t]his enumeration presents nothing for review." *Campbell v. State,* 149 Ga. App. 299 (2) (254 SE2d 389). See also *Security Life Ins. Co. v. Blitch,* 155 Ga. App. 167 (6) (270 SE2d 349).

5. The trial court charged the language of Code Ann. § 105-101: "A tort is the unlawful violation of a private legal right, other than a mere breach of contract, express or implied; *or, it may be the violation of a public duty, by reason of which some special damage accrues to the individual.*" (Emphasis supplied.) Appellants objected on the ground that the action was predicated upon a breach of a private right, not a public duty, and that the emphasized portion of the charge was not adjusted to the evidence.

The public duty in the instant case was on Mrs. Moore, as the surviving spouse, to properly dispose of her husband's body. See generally *Wright,* supra, Division 2. As the one with the duty to bury her husband, Mrs. Moore had the private right as against all others to do so without unlawful and unwarranted interference. See *Wright,* hn. 4. It was the violation of this private and exclusive right which was the basis for the instant tort action. "[A]n unlawful and unwarranted interference with the exercise . . . of [the] right to bury the body . . . [is] a tort which [gives rise to] a cause of action against the wrong-doer or wrong-doers." Id., Division 4. Thus, it appears that some of the language of the contested charge may not have been applicable to the facts of this case as shown by the evidence.

However, even assuming that the charge was, in its emphasized part, inapplicable in the instant case, it does not follow that the giving of it was reversible error. "[T]his court will not reverse the judgment unless it further appears that the inapplicable part was calculated to

mislead the jury and affect their verdict erroneously, or unless it should appear that the inapplicable part prejudiced the rights of the complainant." *Atlanta Laundries v. Goldberg,* 71 Ga. App. 130 (2) (30 SE2d 349). In the instant case, it would appear that "[t]he excerpt complained of could not have been prejudicial inasmuch as the court was stating a principle of law in the abstract . . ." *Grannemann v. Salley,* 95 Ga. App. 778 (3) (99 SE2d 338). This is true because, almost immediately after charging generally on the definition of a "tort," the trial court instructed the jury with regard to the violation of private duties. See Code Ann. § 105-104. While appellants objected to this subsequent charge on private duties and enumerate the giving of it as error on the ground that there was no evidence adduced that the violation of any private duty was "accompanied with damage," this objection was not meritorious. The evidence of "damage" was sufficient. *Stephens v. Waits,* supra, p. 44. Thus, while the jury was charged generally on the broad definition of a "tort," they were further specifically instructed in greater detail on the applicable legal principles which underlay the instant tort action. Under these circumstances, we find no error in the charge on Code Ann. § 105-101 in its entirety.

6. The trial court instructed the jury concerning appellees' allegations of interference with their easement of burial as follows: "One who is the owner of an easement of burial in a cemetery is entitled to recover damages from anyone who wrongfully interferes with such right." Appellants argue that there was no evidence of such an interference to support that charge. Our holding in Division 1 of this opinion controls this issue adversely to appellants.

There appearing no error which contributed to the judgment of the trial court, that judgment must be affirmed.

*Judgment affirmed. Deen, P. J., McMurray, P. J., Banke, Birdsong, Sognier and Pope, JJ., concur. Quillian, C. J., and Carley, J., dissent.*

DECIDED NOVEMBER 12, 1982 —
REHEARING DENIED DECEMBER 7, 1982 —

*Charles S. Wynne, Steven P. Gilliam,* for appellants.
*Dennis T. Cathey,* for appellees.

CARLEY, Judge, dissenting.

I agree with the majority that "the evidence would clearly authorize a finding that Mr. Kelley's actions were an unlawful and unwarranted interference with Mrs. Moore's exercise of" the right of

burial of Mr. Moore. I also believe that the majority is correct in holding that "the private right to bury Mr. Moore belonged only to Mrs. Moore and that the other appellees were not entitled to recover for an interference with that right . . ." In my opinion, this determination should have resulted in a further holding that the trial court erred in denying appellant's motion for directed verdict as to all of the appellees except Mrs. Moore. However, since the majority has found the evidence in this case to support a recovery for interference with an *easement* of burial as well as for interference with the *right* of burial, I must respectfully dissent.

It is clear that whatever rights were violated by Kelley's actions, a violation of appellees' right of sepulture — the right to use the cemetery lot for Mr. Moore's grave — was not one. The decision to have Mr. Moore's body buried elsewhere was solely the result of his widow's wishes and was based upon Mr. Kelley's offensive and intrusive actions at the funeral service, not upon appellants' refusal to permit the burial to take place in the cemetery. Compare *Wright v. Hollywood Cemetery Corp.,* 112 Ga. 884 (38 SE 94) (1900). Thus, under the evidence, there was no violation of or interference with appellees' property interest in the cemetery plot and the existence of their rights and interests in the plot is of no consequence.

The majority attempts to circumvent the clear absence of evidence supporting a violation of appellees' property rights in the actual cemetery plot by relying upon the case of *Roberson v. Allen,* 7 Ga. App. 142 (66 SE 542) (1909) applying the landlord and tenant doctrine of "constructive eviction." The majority relies upon the fact that, in *Roberson,* the defendant landlord's conduct was " 'insulting and dictatorial' and deprived the plaintiffs of the use of the property they rented from him." While the majority sees "no difference in the behavior of appellant Kelley in the present case," I can see no similarity. In *Roberson,* the defendant landlord wanted the plaintiffs off his property, demanded that they leave the property and did everything he could to force them to leave, including threatening to kill the plaintiffs' stock and threatening personal violence against the plaintiffs. In *Roberson,* the conduct of the landlord clearly amounted to a constructive eviction. In the instant case, however, Mr. Kelley's conduct — though clearly reprehensible and unjustified — did not constitute an interference with the property right to bury Mr. Moore in the plot which was subject to the easement for burial. The evidence demonstrated that Mr. Kelley's actions were in violation of Mrs. Moore's exclusive right, as the surviving spouse, to bury her husband and, therefore, I believe that it was error to fail to direct a verdict as to the remaining appellees, who, as next of kin, had no right equal to their mother's in this regard. See Steagall v. Doctors Hospital, 171

F2d 352 (D.C. Cir. 1948) (citing *Pollard v. Phelps,* 56 Ga. App. 408 (193 SE 102) (1937)).

I also must dissent to the majority's holding that it was not error for the trial court to charge with regard to recovery of damages for interference with a burial easement. As discussed above, the evidence in the case at bar would not authorize a finding that Mr. Kelley's actions constituted a violation of any property interest in the cemetery plot itself. Compare *Jacobus v. Congregation &c. of Israel,* 107 Ga. 518 (33 SE 853) (1899); *Wright,* 112 Ga. 884, supra; *Phinizy v. Gardner,* 159 Ga. 136 (1) (125 SE 195) (1924). What the evidence would authorize is a finding that Mr. Kelley's actions were a violation of Mrs. Moore's personal right, as the surviving spouse, to be free from unwarranted and unlawful interference with her husband's burial service. *Stephens v. Waits,* 53 Ga. App. 44 (184 SE 781) (1935). "The right of burial relates to the dead body and the right of sepulture to the cemetery lot." 8 EGL Dead Bodies, § 2, p. 106 (1978 Rev.). While basically distinct rights, it is true that the right of sepulture is, by its nature, an incident of the right of burial. "[W]hoever [has] the right to bury [the] remains [has] the right to inter them" in a lot wherein there is a lawful right of sepulture. *Wright,* 112 Ga. at 887, supra. Accordingly, in some cases, the violation of the lawful right of sepulture, a property right, is the ultimate result of an interference with the right of burial, a personal right. "[T]he plaintiffs had a good cause of action against the defendants, arising out of their right to bury the body . . . in this cemetery and in this lot, and the tort committed by the defendants, in preventing them from exercising this right, *and* in refusing to allow them, with the body of their loved one and the 'funeral procession composed of friends and relatives,' to enter said cemetery for this purpose." (Emphasis supplied.) *Wright,* 112 Ga. at 891, supra.

However, it is also true that the right of burial may be violated where the wrongdoer's actions do not ultimately result in an invasion of the owner's property interest in the cemetery plot but constitute only an invasion of the personal right of the one charged with the duty of burial to be free from a wilful or wanton interference with the burial service. *Stephens,* 53 Ga. App. at 44, supra. The instant case is of the latter type. Mr. Kelley's actions were an invasion of Mrs. Moore's personal right to be free of wanton disruption of the burial of her husband. While this tort was committed in or around property in which Mr. Moore's family had a burial easement, Mr. Kelley's actions did not result in an invasion of the property interest that Mr. Moore's family had in the plot. That Mr. Moore was interred elsewhere was ultimately because of his widow's wishes in that regard, a desire understandably based upon Mr. Kelley's violation of her personal

rights. However, the fact that Mrs. Moore chose to have her husband's body buried elsewhere as the result of Mr. Kelley's unwarranted behavior does not demonstrate that there has been a wrongful interference on Mr. Kelley's part with the property rights of the owners of the easement of burial. The mere fact that a violation of a personal right occurs on property in which the injured party has an interest does not give rise to a cause of action for an invasion of that property interest.

It follows that the contested charge in the instant case was not authorized by the evidence. It erroneously instructed the jury that Mrs. Moore was entitled to recover damages for an invasion of her easement of burial in the plot. The case having been submitted to the jury under a theory not authorized by the evidence, it is my opinion that a new trial must be granted as to Mrs. Moore. *Kendrick v. Blackwell,* 189 Ga. 225, 227 (2) (5 SE2d 633) (1939).

I am authorized to state that Chief Judge Quillian joins in this dissent.